UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| J.P., a minor, and MARIONNA FELTS-PING, | Case No. |
| Plaintiffs | |
| v. | **COMPLAINT FOR DAMAGES** |
| WILLIAMSON COUNTY EDUCATION SERVICES, WILLIAMSON COUNTY SPECIAL EDUCATION DISTRICT, MARION COMMUNITY UNIT SCHOOL DISTRICT #2, CHRISTOPHER ROBERTS, CYNTHIA ALLEN, JAMI HODGE, MELISSA COCKBURN, CHUCK WILLIAMSON, BECKY MOSS, and KEITH OATES, | **JURY TRIAL REQUESTED** |
| Defendants. | |

Plaintiffs J.P., a minor by and through his mother and next friend, MARIONNA FELTS-PING, and MARIONNA FELTS-PING, individually, allege as follows:

## I.   JURISDICTION AND VENUE

1.      Jurisdiction over Plaintiffs' federal law claims is founded upon 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (federal civil rights jurisdiction). The Defendants reside in Illinois and the incidents giving rise to this action occurred in Williamson County, Illinois.

## II.      PARTIES

2.      Plaintiff MARIONNA FELTS-PING is a resident of Marion, Williamson County, Illinois.  She brings this action on her own behalf and as guardian for her son, J.P., a minor.

3.      Plaintiff J.P., a minor, is a resident of the City of Marion, County of Williamson,

Illinois.

4.     Defendant Williamson County Education Services ("WCES") is a public entity operating under Illinois law, subject to Title II of the Americans with Disabilities Act of 1990, the requirements of the Rehabilitation Act of 1973, and to all other legal requirements referred to in this Complaint.

5.     Defendant Williamson Special Education District ("WCSED") is a public entity operating under Illinois law, subject to Title II of the Americans with Disabilities Act of 1990, the requirements of the Rehabilitation Act of 1973, and to all other legal requirements referred to in this Complaint.

6.     Defendant Marion Community Unit School District #2 ("MCUSD") is a public entity operating under Illinois law as a school district, subject to Title II of the Americans with Disabilities Act of 1990, the requirements of the Rehabilitation Act of 1973, and to all other legal requirements referred to in this Complaint.

7.     In enacting Title II of the Americans with Disabilities Act, Congress validly abrogated state sovereign immunity, and thus WCES, WCSED, and MCUSD may be sued pursuant to Title II.  By accepting Federal Rehabilitation Act funds, WCES, WCSED, and MCUSD waived its sovereign immunity under the Eleventh Amendment to claims brought pursuant to §504 of the Rehabilitation Act of 1973.

8.     Defendant Christopher Roberts ("ROBERTS") is a resident of Williamson County, Illinois.  ROBERTS is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.  All actions alleged herein by ROBERTS were in the course and scope of his employment with WCES, WCSED, and/or MCUSD.  As such, WCES, WCSED, and/or MCUSD are vicariously liable for the actions of ROBERTS alleged herein.

9.     Defendant Cynthia Allen ("ALLEN") is a resident of the Williamson County, Illinois.  ALLEN is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.  All actions alleged herein by ALLEN were in the course and scope of her employment with WCES, WCSED, and/or MCUSD.  As such, WCES, WCSED, and/or MCUSD are

2

vicariously liable for the actions of ALLEN alleged herein.

10.     Defendant Jami Hodge ("HODGE") is, upon information and belief, a resident of Williamson County, Illinois, and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.  HODGE is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.  All actions alleged herein by HODGE were in the course and scope of her employment with WCES, WCSED, and/or MCUSD.  As such, WCES, WCSED, and/or MCUSD are vicariously liable for the actions of HODGE alleged herein.

11.     Defendant Melissa Cockburn ("COCKBURN") is, upon information and belief, a resident of Williamson County, Illinois, and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.  COCKBURN is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.  All actions alleged herein by COCKBURN were in the course and scope of her employment with WCES, WCSED, and/or MCUSD.  As such, WCES, WCSED, and/or MCUSD are vicariously liable for the actions of COCKBURN alleged herein.

12.     Defendant Chuck Williamson ("WILLIAMSON") is, upon information and belief, a resident of Williamson County, Illinois, and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.  WILLIAMSON is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.  All actions alleged herein by WILLIAMSON were in the course and scope of his employment with WCES, WCSED, and/or MCUSD.  As such, WCES, WCSED, and/or MCUSD are vicariously liable for the actions of WILLIAMSON alleged herein.

13.     Defendant Becky Moss ("MOSS") is, upon information and belief, a resident of Williamson County, Illinois, and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.  MOSS is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.  All actions alleged herein by MOSS were in the course and scope of her employment with WCES, WCSED, and/or MCUSD.  As such, WCES, WCSED, and/or MCUSD are vicariously liable for the actions of MOSS alleged herein.

14.     Defendant KEITH OATES is, upon information and belief, a resident of

3

Williamson County, Illinois, and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.  MOSS is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.  All actions alleged herein by MOSS were in the course and scope of his employment with WCES, WCSED, and/or MCUSD.  As such, WCES, WCSED, and/or MCUSD are vicariously liable for the actions of OATES alleged herein.

15.     At all relevant times set forth herein, all Defendants acted in concert and as agent of one another.

### III.     FACTUAL ALLEGATIONS

16.     J.P. was born in 2003.

17.     J.P. has been diagnosed with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder as well as specific learning disabilities associated with reading, written expression, and math.

18.     MARIONNA FELTS-PING is J.P.'s mother. During all relevant times herein, J.P. lived with MARIONNA FELTS-PING.

19.     Because of his disabilities, J.P. has received special education services, coordinated through WCES, WCSED, and/or MCUSD.

20.     Prior to August 21, 2015, J.P. began as a special education student assigned to the location at Marion Junior High School, located at 1609 W Main St, Marion, Illinois.  The special education services in the classroom to which J.P. was assigned for his seventh grade year (hereinafter "the Classroom") at this location were provided by, and coordinated through, WCES, WCSED, and/or MCUSD.

21.     Prior to J.P.'s seventh grade attendance in the Classroom, he had never been confined in an isolated time out room at all, for any period of time.

22.     Prior to J.P.'s attendance in the Classroom, Defendants had never created a plan for behavioral intervention with J.P. that included locking J.P. in an isolated time out room.

23.     Further, prior to J.P. beginning seventh grade, Defendants had made statements to Plaintiffs representing that they would not use isolated time outs for J.P. during his attendance in

4

the Classroom.

24.     At all times relevant to this Complaint, ROBERTS was a teacher in the

Classroom.

25.     At all times relevant to this Complaint, ALLEN was a teacher's aide or assistant

in the Classroom.

26.     At all times relevant to this Complaint, HODGE, COCKBURN, WILLIAMSON,

MOSS, and OATES were administrators for Defendants WCES, WCSED, and/or MCUSD.

"Closet 2"

27.     Inside the Classroom there existed a room used as an isolated time out room.

28.     This room was referred to alternatively as "Closet 2," "the cool down room," and

"the Hole" (hereinafter "Closet 2").

29.     From the time period of approximately August 21, 2015, to September 2, 2015,

Defendants, including ROBERTS and/or ALLEN, confined J.P. in Closet 2 for extended periods

of time, on multiple occasions.

30.     Closet 2 has a single square window on the door, and no other windows.

31.     The door to Closet 2 contains a lever-type handle with a deadbolt type locking

mechanism that locks when the handle is in the downward position.  When the handle is in the

downward position, a small bar extracts out of the lock and slides through a metal eyelet secured

to the right door frame, preventing someone inside the room from opening the door.

32.     From approximately August 21, 2015, to September 2, 2015, Defendants,

including ROBERTS, ALLEN, MOSS, and/or WILLIAMSON, confined J.P. in Closet 2, and

locked him inside using the door handle's deadbolt locking mechanism.

33.     Closet 2 is approximately 15 feet 6 inches by 5 feet 3 inches.

34.     From approximately August 21, 2015, to September 2, 2015, Defendants,

including ROBERTS, ALLEN, MOSS, and/or WILLIAMSON, confined J.P. in Closet 2 on

multiple occasions, including for extended periods of time.

35.     During the time period of approximately August 21, 2015, to September 2, 2015, Defendants confined J.P. in Closet 2 when there was no therapeutic necessity to do so, where he posed no risk to the safety of himself or others.

36.     Defendants confined J.P. in Closet 2 for behaviors that were manifestations of his identified disabilities, effectively disciplining J.P. for his disabilities by confining and locking him in Closet 2.

37.     Over the aforementioned time period, Closet 2 did not have adequate ventilation.

38.     On one or more occasions during the aforementioned time period, while Defendants confined J.P. in Closet 2, Defendants, including ROBERTS and/or ALLEN, blocked the Closet 2 window using cardboard, paper, or another object.

39.     On one or more occasions during the aforementioned time period, while Defendants confined J.P. in Closet 2, no supervising adult remained within two feet of the door to Closet 2.

40.     On one or more occasions during the aforementioned time period, while Defendants confined J.P. in Closet 2, no supervising adult maintained sight of J.P.

41.     On one or more occasions during the aforementioned time period, while Defendants confined J.P. in Closet 2, Defendants tampered with the lock to Closet 2 so as to prevent J.P. from opening the door.

42.     On one or more occasions, Defendants kept J.P. confined in Closet 2 during his lunch period.  On this occasion or occasions, J.P. was required to eat lunch in Closet 2 on the floor.

43.     In spite of Defendants confining J.P. in Closet 2 for longer than thirty minutes on one or more occasion, and multiple times in a three-hour period, Defendants never notified a qualified educator to evaluate the use of the isolated time out room, as provided by 23 Ill. Adm. Code § 1.285(f)(4)(A).

44.     In spite of Defendants confining J.P. in Closet 2 on multiple occasions during approximately August 21, 2015, to September 2, 2015, Defendants failed to create a written

policy concerning the use of Closet 2, and/or properly notify J.P.'s parents, including MARIONNA FELTS-PING, as provided by 23 Ill. Adm. Code § 1.280(c) and 1.285(f)(1)(K).

45.    Defendants failed to document each incident precipitating J.P. being confined in Closet 2, or each document each time that J.P. was confined in Closet 2.

46.    In spite of J.P. being confined to Closet 2 multiple times prior to September 2, 2015, Defendants failed to document J.P. being confined in the room at all until September 2, 2015, after Plaintiff MARIONNA FELTS-PING confronted Defendants about their use of Closet 2 and their failure to inform J.P.'s parents about the use of the same.

47.    Upon information and belief, any documentation of J.P. being confined in Closet 2 constituted an attempt by Defendants to create a *post hoc* justification for confining J.P. in Closet 2, where Defendants attempted to create the false impression that J.P. presented a risk of harm to himself or others.

48.    In spite of Defendants confining J.P. in Closet 2 on multiple occasions during August 21, 2015, to September 2, 2015, Defendants failed to enlist a qualified educator to create a written evaluation of the use of isolated time outs to be placed in J.P.'s record, as is required by 23 Ill. Adm. Code § 1.285(f)(4)(A).

49.    Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES failed to provide the proper training to ROBERTS and ALLEN so that seclusion was only to be used as a method of last resort

50.    Defendants failed to use safety protocols on one or more occasions when confining J.P. in Closet 2.

51.    Defendants confined J.P. in Closet 2 when it was not the least restrictive means necessary.

52.    Defendants' frequent and extended confinement in Closet 2 caused J.P. to suffer emotional, educational, and behavioral injuries.

53.    Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES failed to monitor ROBERTS and ALLEN so that J.P. was not improperly

placed in seclusion, and left in seclusion for an excessive time.

<u>Physical Restraints</u>

54.     Prior to his attendance in the Classroom, J.P. had never been physically restrained by teachers or school staff.

55.     From approximately August 21, 2015, to September 2, 2015, ROBERTS and ALLEN made harmful physical contact with J.P. on multiple occasions.

56.     Defendants ROBERTS and/or ALLEN painfully twisted J.P.'s arm behind his back.

57.     Defendants ROBERTS and/or ALLEN painfully bent J.P.'s wrist in a wristlock-type maneuver, using this painful position to forcefully push J.P. into a chair.

58.     Defendants ROBERTS and/or ALLEN painfully dragged J.P. by the arm into Closet 2.

59.     Defendants ROBERTS and/or ALLEN painfully squeezed and/or bent J.P.'s pinky finger.

60.     During the aforementioned time period, ROBERTS and ALLEN made harmful physical contact with J.P. using methods that were not specifically planned-for restraints.

61.     During the aforementioned time period, ROBERTS and ALLEN harmfully physically contacted and restrained J.P. when he did not present a risk of harm.

62.     The aforementioned harmful physical contact was initiated each time by ROBERTS and ALLEN, not by J.P.

63.     ROBERTS and ALLEN made the aforementioned harmful physical contact in response to mere oral statements by J.P. that presented no risk of harm.

64.     Defendants made harmful physical contact with J.P. for behaviors that were manifestations of his identified disabilities, effectively disciplining J.P. for his disabilities using painful physical contact.

65.     For the aforementioned harmful physical contact and restraints, Defendants failed

to log each incident of physical restraint, or the behavior that precipitated each restraint, or notify J.P.'s parents, as required by 23 Ill. Adm. Code § 1.285(f)(1)(G)-(K).

66.     Defendants repeatedly failed to call required emergency IEP (Individual Education Plan) meetings after they restrained and/or confined J.P.

67.     Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES failed to supervise ROBERTS or ALLEN so as to properly implement the individualized academic and behavior program for J.P., to ensure that unnecessary harmful physical contact was not made with J.P.

68.     Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES failed to provide proper training to ROBERTS and ALLEN so that J.P.'s behavior be redirected using the least restrictive means necessary.

69.     Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES failed to provide the proper training to ROBERTS and ALLEN so that harmful physical restraint was only to be used as a method of last resort.

70.     Defendants failed to use safety protocols on one or more occasions when restraining J.P.

71.     Defendants used restraint techniques known to lead to harm of children, including putting strain on J.P.'s joints and known pressure points on the body such as the shoulder, elbow, wrist, and finger.

72.     Defendants failed to redirect J.P. using the least restrictive means necessary.

73.     Upon information and belief, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES directed and coached ROBERTS and ALLEN to complete incident reports when restraint was used stating that students, including J.P. were "a danger to himself and others" even when this was not true.  These reports were attempts to provide false *post hoc* justifications for Defendants' harmful physical contact with J.P.  These incident reports were only completed after MARIONNA FELTS-PING confronted Defendants concerning the use of harmful physical force with J.P.

74.     Upon information and belief, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES directed and coached personnel, including ROBERTS and ALLEN, to minimize the use of physical force, restraints, and/or seclusion used with J.P. in the aforesaid incident reports.

75.     Upon information and belief, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES directed and coached ROBERTS and ALLEN to document that J.P. was restrained and/or placed in seclusion appropriately when in fact the techniques used were inappropriate, not the least restrictive method possible, and unsafe.

76.     Upon information and belief, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES directed and coached ROBERTS and ALLEN to regularly restrain J.P. and/or place J.P. in seclusion, resulting in frequent and unnecessary application of painful and injurious physical force.

77.     As a result of the aforementioned instructions by Defendants, personnel frequently restrained J.P., and/or placed J.P. in seclusion for long periods of time.

78.     Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES, failed to monitor ROBERTS and ALLEN so that J.P. was not improperly restrained and/or improperly placed in seclusion, and left in seclusion for an excessive time.

79.     Defendants were otherwise physically rough with J.P.

80.     Defendants failed to adequately implement an individualized plan for behavioral interventions that were appropriate for J.P.

81.     Each Defendant had an obligation to protect the children in their care, including J.P.

82.     Defendants failed to report instances of physically abusive conduct, including the aforementioned use of Closet 2, and harmful physical contact, to the appropriate authorities, as school personnel, as is required by the reporting statute, 325 ILCS 5/1 *et seq.*

83.     Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES, had actual and constructive notice of the inappropriate and unlawful use

10

of Closet 2 by ROBERTS and/or ALLEN.

84.     Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES, had actual and constructive notice of the inappropriate harmful physical contact by ROBERTS and/or ALLEN.

85.     Defendants had a responsibility to place J.P. in a safe and appropriate learning environment, free from hostility, harm, or discrimination.  In addition, Defendants do not employ similar isolation techniques or physical restraints against students who do not have J.P.'s disabilities.

86.     The aforementioned actions of Defendants caused J.P. to suffer emotional, educational, and behavioral injuries.

## IV.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### (Violation of § 504 of the Rehabilitation Act of 1973;
#### Plaintiff J.P. vs. Defendant WCES, WCSED, MCUSD)

87.     Plaintiff J.P. incorporates and realleges by reference the foregoing paragraphs 1 through 86, inclusive as if they were fully set forth herein.

88.     Upon information and belief, Defendants are, and have been at all relevant times, the recipient of federal financial assistance, and that they are therefore subject to the provisions of 29 U.S.C. § 794 that prohibits recipients of federal financial assistance from denying equal access to its services to disabled persons.

89.     By their actions or inactions in denying equal access to educational services and by subjecting Plaintiff J.P. to a hostile educational environment, Defendants have violated J.P.'s rights under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder.

90.     Defendants have created a hostile learning environment by repeatedly restraining J.P. on multiple occasions from approximately August 21, 2015, to September 2, 2015, and for restraining him for long periods of time.

91.     Defendants have created a hostile learning environment by confining J.P. for one or more extended periods of time in an isolation room during his attendance at the school.

92.     Defendants knowingly subjected J.P. to excessive confinement based on his disabilities.

93.     Defendants knowingly subjected J.P. to excessive restraint based on his disabilities.

94.     Defendants failed to promptly remove J.P. from the Classroom after he was excessively confined, and assaulted and battered.

95.     Defendants failed to provide J.P. equal access to free and appropriate education based on his disabilities by assigning him to the Classroom knowing that he would be subjected to a hostile educational environment because of his disabilities, by continuing his assignment in the aforementioned classroom despite knowing J.P. was being regularly inappropriately restrained, by continuing his assignment in the aforementioned classroom despite knowing J.P. was being regularly confined for extended periods in Closet 2, and/or by failing to promptly remove J.P. from the aforementioned classroom after he was assaulted and battered.

96.     Defendants do not employ the harmful and unnecessary physical restraint and isolation practices against students who do not have J.P.'s disabilities.

97.     Defendants have deprived J.P. of meaningful access to education by repeated use of unnecessary physical restraint and isolation.

98.     As a result of Defendants' failure to comply with their duty under §504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder,

Plaintiff J.P. has suffered damages including special and general damages according to proof.

## SECOND CLAIM FOR RELIEF

**(Unlawful Seizure - Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution;**
**Plaintiff J.P. vs. ROBERTS, ALLEN, HODGE, COCKBURN,**
**WILLIAMSON, MOSS, and OATES)**

99.     Plaintiff J.P. incorporates and realleges by reference the foregoing paragraphs 1 through 98, inclusive as if they were fully set forth herein.

100.     At all times relevant to this Complaint, Defendants ROBERTS, ALLEN, HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES were acting under the color of the law.

101.     At all times relevant to this Complaint, J.P. had a constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and to be secure in his person and to maintain bodily integrity against unreasonable assaults of his person.

102.     Defendants ROBERTS, ALLEN, MOSS, and/or WILLIAMSON restrained J.P.'s liberty to the degree that a reasonable person would not feel free to leave.

103.     The foregoing conduct of Defendants ROBERTS, ALLEN, MOSS, and/or WILLIAMSON constituted an unreasonable seizure of Plaintiff J.P., in violation of the Fourth Amendment to the United States Constitution.

104.     Defendants' conduct was objectively unreasonable under the circumstances and in light of the educational objectives J.P. was trying to achieve.

105.     Defendants' conduct in confining J.P. in an isolation room, as well as physically seizing J.P., unlawfully subjected J.P. to excessive, unreasonable, and unnecessary physical force.

106.     Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and/or OATES violated Plaintiff J.P.'s rights under the Fourth Amendment to the U.S. Constitution by actions, including but not limited to, acting with deliberate indifference to the risk of harm to J.P. and failing to adequately train and supervise its faculty and staff in the use of force and restraint when seizing special education students with disabilities.

107.     The foregoing acts and omissions of Defendants ROBERTS, ALLEN, HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES violated the clearly established rights of J.P. of which reasonable people in Defendants' position knew or should have known.

108.     Defendants' actions, as described above, were objectively unreasonable, willful and wanton, in light of the facts and circumstances.

109.     The above-mentioned conduct was done in the course and scope of employment and while on duty under the color of the law.  This count is being brought with regard to the individual capacity of Defendants ROBERTS, ALLEN, HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES.

110.     The aforementioned actions of Defendants ROBERTS, ALLEN, HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES were the direct and proximate cause of the constitutional violations stated above, and the damages as heretofore alleged.

## THIRD CLAIM FOR RELIEF

**(Due Process - Pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the
United States Constitution;
Plaintiff J.P. vs. ROBERTS, ALLEN, HODGE, COCKBURN, WILLIAMSON,
MOSS, and OATES)**

111.     Plaintiff J.P. incorporates and realleges by reference the foregoing paragraphs 1 through 110, inclusive as if they were fully set forth herein.

112.     At all times relevant to this Complaint, Defendants ROBERTS, ALLEN, HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES were acting under the color of the

14

law.

113.   The foregoing conduct of Defendants in confining J.P. in an isolation room, as well as physically seizing J.P, constituted a deprivation of Plaintiff J.P.'s liberty without due process of the law, in violation of the Fourteenth Amendment to the United States Constitution.

114.   Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and/or OATES violated Plaintiff J.P.'s rights under the Fourteenth Amendment to the U.S. Constitution by actions, including but not limited to, acting with deliberate indifference to the risk of harm to J.P. and failing to adequately train and supervise its faculty and staff in the use of force and restraint when seizing special education students with disabilities.

115.   The above-mentioned conduct was done in the course and scope of employment and while on duty under the color of the law.  This count is being brought with regard to the individual capacity of Defendants ROBERTS, ALLEN, HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES.

116.   Defendants' actions, as described above, were objectively unreasonable, willful and wanton, in light of the facts and circumstances.

117.   The aforementioned actions of Defendants ROBERTS, ALLEN, MOSS, and WILLIAMSON were the direct and proximate cause of the constitutional violations stated above.

### FOURTH CLAIM FOR RELIEF

**(Discrimination in Violation of the Americans with Disabilities Act;
Plaintiff J.P. vs. WCES, WCSED, MCUSD)**

118.   Plaintiff J.P. incorporates and realleges by reference the foregoing paragraphs 1 through 117, inclusive as if they were fully set forth herein.

119.   At all relevant times herein, Plaintiff J.P. was entitled to the protections of the

"Public Services" provision of Title II of the Americans with Disabilities Act of 1990.  Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 U.S.C. § 12131, section 201 of the ADA.

120.    Pursuant to 42 U.S.C. § 12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.  J.P. was at all relevant times herein a qualified individual with a disability as therein defined.

121.    Defendants have failed in their responsibilities under Title II to provide services, programs and activities in a full and equal manner to disabled persons as described hereinabove, including failing to ensure that the educational services were provided on an equal basis to J.P., a child with disabilities, and free from hostility toward him because of his disability.

122.    Defendants have further failed in their responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described hereinabove by placing J.P. in the Classroom and into a hostile educational environment.

123.    Defendants have further failed in their responsibilities under Title II to provide it services, programs and activities in a full and equal manner to disabled persons as described hereinabove by continuing J.P.'s placement in the Classroom, knowing that J.P. was being regularly restrained, confined for extended periods, and subjected to a hostile educational environment.

124.    Defendants have further failed in their responsibilities under Title II to provide it services, programs and activities in a full and equal manner to disabled persons as described hereinabove, including by continuing J.P.'s placement in the Classroom after J.P. was restrained,

confined, and/or assaulted and battered by ROBERTS and/or ALLEN, and continuing to assign J.P. to a hostile educational environment.

125.    As a result of Defendants' failure to comply with their duties under the ADA, and the regulations promulgated thereunder, Plaintiff J.P. has suffered damages including special and general damages according to proof.

## FIFTH CLAIM FOR RELIEF

### (Battery; Plaintiff J.P. vs.  Defendants ROBERTS and ALLEN)

126.    Plaintiff J.P. incorporates and realleges by reference the foregoing paragraphs 1 through 125, inclusive as if they were fully set forth herein.

127.    The use of force, as alleged herein, by Defendants against Plaintiff J.P. constituted battery.

128.    At no time did J.P. consent to the touching and force alleged herein.

129.    As a proximate result of Defendants' illegal battery, the minor J.P. has suffered damages, including special and general damages according to proof.

## SIXTH CLAIM FOR RELIEF

### (False Imprisonment; Plaintiff J.P. vs. All Defendants)

130.    Plaintiff J.P. incorporates and realleges by reference the foregoing paragraphs 1 through 129, inclusive as if they were fully set forth herein.

131.    The confinement of J.P. in Closet 2, and/or the use of restraint, as alleged herein, by Defendants against Plaintiff J.P., constitutes a complete confinement and/or restriction of freedom of movement.

132.    The aforementioned complete confinement and/or restriction of freedom of movement was done intentionally, without reasonable grounds to believe that Plaintiff

committed an offense.

133.    At no time did J.P. consent to the restraint and restriction on his freedom of movement alleged herein.

134.    At all times relevant, J.P. was aware of his confinement.

135.    Defendants' restraint of J.P. constituted false imprisonment.

136.    As a direct and proximate result of one or more of the aforementioned false imprisonment committed by Defendants, Plaintiff was caused harm.

137.    As a further direct and proximate result of one or more of the aforementioned negligent acts and omissions committed by Defendants, Plaintiff J.P. has sustained serious, painful and permanent personal injuries, incurred medical expenses in relation to the same, sustained a loss of a normal life, will continue to suffer said injuries, incur medical expenses, and sustain a loss of a normal life in the future.

## SEVENTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress;
### Plaintiff J.P. vs. All Defendants)

138.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 137, inclusive as if they were fully set forth herein.

139.    The actions of Defendants as alleged herein were outrageous, extreme, malicious.

140.    Defendants intended to inflict, were reckless as to the infliction, and/or consciously disregarded the probability of inflicting emotional distress and humiliation upon Plaintiff.

141.    The actions of Defendants, as alleged herein, actually and proximately caused Plaintiff to suffer severe and extreme emotional distress.

## EIGHTH CLAIM FOR RELIEF

**(Negligence; Plaintiff J.P. vs. All Defendants)**

142.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 141, inclusive as if they were fully set forth herein.

143.    At all times relevant to this Complaint, Defendants owed Plaintiff J.P. a duty to exercise reasonable care in their interactions with them.

144.    In violation of said duty, Defendants were guilty of one or more of the following negligent acts and omissions, in that they:

    a.     Unnecessarily confined J.P. in a small area;

    b.     Unnecessarily confined J.P. in Closet 2 on multiple occasions;

    c.     Unnecessarily locked Closet 2 while J.P. was confined inside, on or more occasions;

    d.     Confined J.P. in a small area on one or more occasions for a period of time longer than was strictly necessary;

    e.     Confined J.P. in Closet 2 without adequate, or any, ventilation;

    f.     Confined J.P. in Closet 2 with objects that Defendants knew, or in the exercise of ordinary care should have known, could cause him harm;

    g.     Confined J.P. in Closet 2 while not at all times maintaining visual sight of J.P., when Defendants knew, or in the exercise of ordinary care should have known, that this could cause J.P. harm;

    h.     Confined J.P. in Closet 2 while covering the only window to the room, when Defendants knew, or in the exercise of ordinary care should have known, that this could cause J.P. harm;

    i.     Confined J.P. in Closet 2 with a door that was not readily able to be opened by J.P.;

    j.     Confined J.P. in Closet 2 with a door with a locking mechanism that was tampered with so that it would not be readily able to be opened by J.P.;

    k.     Failed to appropriately document or notify J.P.'s parents of each episode that J.P. was confined in the isolated time out room;

    l.     Confined J.P. when it was not the least restrictive means necessary;

m.      Confined J.P. in an isolated time out room that was not in compliance with the requirements of 23 Ill. Adm. Code § 1.285 *et seq.*;

n.      Confined J.P. in an isolated time out room in a manner that was not in compliance with the requirements of 23 Ill. Adm. Code § 1.285 *et seq.*;

o.      Confined J.P. in an isolated time out room not sufficiently large, in contravention of 23 Ill. Adm. Code § 1.285(a)(1)(B);

p.      Confined J.P. in an isolated time out room that was not free of objects that could cause him harm, in contravention of 23 Ill. Adm. Code § 1.285(a)(1)(B);

q.      Confined J.P. in an isolated time out room while an adult responsible for supervising J.P. did not at all times remain within two feet of the door of the isolated time out room while J.P. was enclosed, shut, and/or locked in the isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(a)(3);

r.      Confined J.P. in an isolated time out room while an adult responsible for supervising J.P. was not at all times able to see J.P., in contravention of 23 Ill. Adm. Code § 1.285(a)(4);

s.      Confined J.P. in an isolated time out room while the door was locked with a mechanism that did not comport with the requirements of 23 Ill. Adm. Code § 1.285(a)(4);

t.      Kept J.P. confined in an isolated time out room longer than was strictly therapeutically necessary, in contravention of 23 Ill. Adm. Code § 1.285(e)(1);

u.      Kept J.P. confined in an isolated time out room longer than the time limits imposed by 23 Ill. Adm. Code § 1.285(e)(1);

v.      Failed to document each episode of isolated time out, in contravention of 23 Ill. Adm. Code § 1.285(f)(1);

w.      Failed to adequately document the incident or behavior that resulted in isolated time out, for each episode of isolated time out, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(F);

x.      Failed to log J.P.'s behavior while he was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(G);

y.      Failed to notify J.P.'s parents of each time J.P. was confined in an isolated time out, or keep a log of the same, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(K);

z.      Failed to log each use of the isolation room in a timely fashion, in contravention of 23 Ill. Adm. Code § 1.285(f)(2)-(3);

aa.    Failed to properly notify a qualified educator in order to evaluate Defendants' use of an isolated time out room after each use that exceeded thirty minutes, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

bb.    Failed to properly notify a qualified educator in order to evaluate the use of an isolated time out room after J.P. was confined in the same multiple times in a three hour period, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

cc.    Failed to have a qualified educator evaluate the appropriateness of continuing to confine J.P. in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A)

dd.    Failed to have a qualified educator create a written evaluation, and place the same in J.P.'s record, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

ee.    Failed to initiate a review of the effectiveness of J.P.'s confinement in isolated time out after the first three instances that J.P. was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(5);

ff.    Failed to involve J.P.'s parents in any review of the effectiveness of J.P.'s confinement in an isolated time out room, after the first three instances that J.P. was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(5).

gg.    Failed to create or disseminate a plan for the use of isolated time outs and/or physical restraints that conformed with the requirements of 23 Ill. Adm. Code § 1.280, or otherwise conform with the requirements of this section.

hh.    Failed to provide adequate advance notification to J.P.'s parents that the use of an isolated time out room would be used, in contravention of 23 Ill. Adm. Code § 1.285(g)(1) and 105 ILCS 5/10-20.14 (a)-(d);

ii.    Failed to send written notice to J.P.'s parents regarding the confinement of J.P. in an isolated time out room in contravention of 23 Ill. Adm. Code § 1.285(g)(2);

jj.    Physically contacted J.P.'s body in a way that Defendants knew, or in the exercise of ordinary care should have known, would cause him harm;

kk.    Physically contacted J.P.'s body in a manner other than an appropriate physical restraint;

ll.    Physically restrained J.P. without the necessity to do the same;

mm.    Physically restrained J.P. when it was not the least restrictive means necessary.

nn.    Failed to adequately document or notify J.P.'s parents of incidents when J.P. was restrained or physically contacted by Defendants;

oo.   Physically restrained J.P. using techniques other than those that were specifically planned, in contravention of 23 Ill. Adm. Code § 1.285(b);

pp.   Physically restrained J.P. when there was no physical risk of harm, in contravention of 23 Ill. Adm. Code § 1.285(d)(1)(A), and 105 ILCS 5/10-20.33;

qq.   Physically restrained J.P. for verbal threats alone and/or reasons other than physical danger, in contravention of 23 Ill. Adm. Code § 1.285(d)(2);

rr.   Physically restrained J.P. without adequately considering his safety during the same, in contravention of 23 Ill. Adm. Code § 1.285(d)(5);

ss.   Failed to adequately log, or log at all, a description of each incident of physical restraint, the behavior that precipitated each use of restraint, or notify J.P.'s parents of the same, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(G)-(K); and

tt.   Failed to log each incident of physical restraint used on J.P. in an adequately timely fashion, in contravention of 23 Ill. Adm. Code § 1.285(f)(2)-(3).

145.   As a direct and proximate result of one or more of the aforementioned negligent acts and omissions committed by Defendants, Plaintiffs were caused harm.

146.   As a further direct and proximate result of one or more of the aforementioned negligent acts and omissions committed by Defendants, Plaintiffs have sustained serious, painful and permanent personal injuries, incurred medical expenses in relation to the same, sustained a loss of a normal life, will continue to suffer said injuries, incur medical expenses, and sustain a loss of a normal life in the future.

**NINTH CLAIM FOR RELIEF**

**(Negligent Hiring, Retention, Supervision, and Training;
Plaintiff J.P. vs. Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN,
WILLIAMSON, MOSS, and OATES)**

147.   Plaintiff J.P. incorporates and realleges by reference the foregoing paragraphs 1 through 146, inclusive as if they were fully set forth herein.

148.   At all relevant times, Defendant ROBERTS was an agent of WCES, WCSED,

MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES.

149.    At all relevant times, Defendant ALLEN was an agent of WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES.

150.    At all relevant times, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES were responsible for the hiring, retention, supervision, and/or training of ROBERTS.

151.    At all relevant times, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES were responsible for the hiring, retention, supervision, and/or training of ALLEN.

152.    At all times relevant to this Complaint, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES owed Plaintiffs a duty to exercise reasonable care in their hiring, retention, supervision, and training of ROBERTS and ALLEN.

153.    In violation of said duty, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES were guilty of one or more of the following negligent acts and omissions, in that they:

a.    Hired ROBERTS as, or assigned ROBERTS to be, lead teacher of the Classroom, when Defendants knew, or in the exercise of ordinary care should have known, that ROBERTS put students such as J.P. at risk of harm;

b.    Hired ALLEN as, or assigned ALLEN to be, an aide in the Classroom, when Defendants knew, or in the exercise of ordinary care should have known, that ALLEN put students such as J.P. at risk of harm;

c.    Retained the employment of ROBERTS in his capacity as lead teacher of the Classroom when Defendants knew, or in the exercise of ordinary care should have known, that continued employment of ROBERTS in his then-current capacity put students such as J.P. at risk of harm;

d.    Retained the employment of ALLEN in her capacity as an aide in the Classroom when Defendants knew, or in the exercise of ordinary care should have known, that continued employment of ALLEN in her then-current

23

capacity put students such as J.P. at risk of harm;

e.    Failed to adequately supervise ROBERTS in his capacity as lead teacher in the Classroom, when Defendants knew, or in the exercise of ordinary care should have known, that ROBERTS put students such as J.P. at risk of harm;

f.    Failed to adequately supervise ALLEN in her capacity as aide in the Classroom, when Defendants knew, or in the exercise of ordinary care should have known, that ALLEN put students such as J.P. at risk of harm;

g.    Failed to adequately train ROBERTS in the appropriate use of isolated time out rooms;

h.    Failed to adequately train ALLEN in the appropriate use of isolated time out rooms;

i.    Failed to adequately train ROBERTS in the appropriate use of physical contact with students;

j.    Failed to adequately train ALLEN in the appropriate use of physical contact with students;

k.    Failed to provide adequate training in the use of isolated time outs, in contravention of 23 Ill. Adm. Code § 1.285(h)(1); and

l.    Failed to provide adequate training in the use of physical restraints, in contravention of 23 Ill. Adm. Code § 1.285(h)(2).

m.    Failed to immediately report, or cause to be reported, the physically abusive conduct of ROBERTS and ALLEN to the appropriate authorities, as school personnel, in contravention of 325 ILCS 5/1 *et seq*.

154.    As a direct and proximate result of one or more of the aforementioned negligent acts and omissions committed by Defendants, Plaintiffs were caused harm.

155.    As a further direct and proximate result of one or more of the aforementioned negligent acts and omissions committed by Defendants, Plaintiffs have sustained serious, painful and permanent personal injuries, incurred medical expenses in relation to the same, sustained a loss of a normal life, will continue to suffer said injuries, incur medical expenses, and sustain a loss of a normal life in the future.

**TENTH CLAIM FOR RELIEF**

**(Negligent Infliction of Emotional Distress; Plaintiff J.P. vs. All Defendants)**

156.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1

24

through 155, inclusive as if they were fully set forth herein.

157.    At all times relevant to this Complaint, Defendants owed Plaintiff J.P. a duty to exercise reasonable care in their interactions with them.

158.    Defendants violated said duty in the ways previously set forth in this Complaint.

159.    As a direct and proximate result of one or more of the negligent acts or omissions previously set forth in this Complaint, Plaintiff J.P. was caused harm as a direct victim of Defendants' negligence.

160.    As a further direct and proximate result of one or more of the aforementioned negligent acts and omissions committed by Defendants, Plaintiff J.P. suffered severe and extreme emotional distress, including an immediate automatic and instinctive emotional response including but not limited to severe and extreme fear, anger, grief, and/or shock, as well as severe and extreme long-lasting neurosis, including but not limited to a severe and extreme anxiety reaction.

## ELEVENTH CLAIM FOR RELIEF

### (Willful and Wanton Conduct; Plaintiff J.P. vs. All Defendants)

161.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 160, inclusive as if they were fully set forth herein.

162.    At all times relevant to this Complaint, Defendants owed Plaintiffs a duty to refrain from willful and wanton conduct.

163.    In violation of said duty, Defendants were guilty of one or more of the following willful and wanton conduct, in that they:

a.    Unnecessarily confined J.P. in a small area;

b.    Unnecessarily confined J.P. in Closet 2 on multiple occasions;

c.    Unnecessarily locked Closet 2 while J.P. was confined inside, on or more

25

occasions;

d.     Confined J.P. in Closet 2 on one or more occasions for a period of time longer than was strictly necessary;

e.     Confined J.P. in Closet 2 without adequate, or any, ventilation;

f.     Confined J.P. in Closet 2with objects, with an utter indifference to or conscious disregard that the objects could cause him harm;

g.     Confined J.P. in Closet 2 while not at all times maintaining visual sight of J.P.;

h.     Confined J.P. in Closet 2 while covering the only window to the room;

i.     Confined J.P. in Closet 2 with a door that was not readily able to be opened by J.P.;

j.     Confined J.P. in Closet 2 with a door with a locking mechanism that was tampered with so that it would not be readily able to be opened by J.P.;

k.     Failed to appropriately document or notify J.P.'s parents of each episode that J.P. was confined in Closet 2;

l.     Confined J.P. when it was not the least restrictive means necessary;

m.     Confined J.P. in an isolated time out room that was not in compliance with the requirements of 23 Ill. Adm. Code § 1.285 *et seq.*;

n.     Confined J.P. in an isolated time out room in a manner that was not in compliance with the requirements of 23 Ill. Adm. Code § 1.285 *et seq.*;

o.     Confined J.P. in an isolated time out room not sufficiently large, in contravention of 23 Ill. Adm. Code § 1.285(a)(1)(B);

p.     Confined J.P. in an isolated time out room that was not free of objects that could cause him harm, in contravention of 23 Ill. Adm. Code § 1.285(a)(1)(B);

q.     Confined J.P. in an isolated time out room while an adult responsible for supervising J.P. did not at all times remain within two feet of the door of an isolated time out room while J.P. was enclosed, shut, and/or locked in the isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(a)(3);

r.     Confined J.P. in an isolated time out room while an adult responsible for supervising J.P. was not at all times able to see J.P., in contravention of 23 Ill. Adm. Code § 1.285(a)(4);

s.     Confined J.P. in an isolated time out room while the door was locked with a mechanism that did not comport with the requirements of 23 Ill. Adm. Code § 1.285(a)(4);

t.     Kept J.P. confined in an isolated time out room longer than was strictly therapeutically necessary, in contravention of 23 Ill. Adm. Code § 1.285(e)(1);

u.  Kept J.P. confined in an isolated time out room longer than the time limits imposed by 23 Ill. Adm. Code § 1.285(e)(1);

v.  Failed to document each episode of isolated time out, in contravention of 23 Ill. Adm. Code § 1.285(f)(1);

w.  Failed to adequately document the incident or behavior that resulted in isolated time out, for each episode of isolated time out, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(F);

x.  Failed to log J.P.'s behavior while he was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(G);

y.  Failed to notify J.P.'s parents of each time J.P. was confined in an isolated time out, or keep a log of the same, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(K);

z.  Failed to log each use of an isolation room in a timely fashion, in contravention of 23 Ill. Adm. Code § 1.285(f)(2)-(3);

aa.  Failed to properly notify a qualified educator in order to evaluate Defendants' use of an isolated time out room after each use that exceeded thirty minutes, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

bb.  Failed to properly notify a qualified educator in order to evaluate the use of an isolated time out room after J.P. was confined in the same multiple times in a three hour period, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

cc.  Failed to have a qualified educator evaluate the appropriateness of continuing to confine J.P. in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A)

dd.  Failed to have a qualified educator create a written evaluation, and place the same in J.P.'s record, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

ee.  Failed to initiate a review of the effectiveness of J.P.'s confinement in isolated time out after the first three instances that J.P. was confined in the isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(5);

ff.  Failed to involve J.P.'s parents in any review of the effectiveness of J.P.'s confinement in the isolated time out room, after the first three instances that J.P. was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(5).

gg.  Failed to create or disseminate a plan for the use of isolated time outs and/or physical restraints that conformed with the requirements of 23 Ill. Adm. Code § 1.280, or otherwise conform with the requirements of this section.

hh.  Failed to provide adequate advance notification to J.P.'s parents that the use of an isolated time out room would be used, in contravention of 23 Ill. Adm. Code § 1.285(g)(1) and 105 ILCS 5/10-20.14 (a)-(d);

ii.    Failed to send written notice to J.P.'s parents regarding the confinement of J.P. in an isolated time out room in contravention of 23 Ill. Adm. Code § 1.285(g)(2);

jj.    Physically contacted J.P.'s body with an utter indifference to or conscious disregard for causing J.P. harm;

kk.    Physically contacted J.P.'s body in a manner other than an appropriate physical restraint;

ll.    Physically restrained J.P. without the necessity to do the same;

mm.    Physically restrained J.P. when it was not the least restrictive means necessary.

nn.    Failed to adequately document or notify J.P.'s parents of incidents when J.P. was restrained or physically contacted by Defendants;

oo.    Physically restrained J.P. using techniques other than those that were specifically planned, in contravention of 23 Ill. Adm. Code § 1.285(b);

pp.    Physically restrained J.P. when there was no physical risk of harm, in contravention of 23 Ill. Adm. Code § 1.285(d)(1)(A), and 105 ILCS 5/10-20.33;

qq.    Physically restrained J.P. for verbal threats alone and/or reasons other than physical danger, in contravention of 23 Ill. Adm. Code § 1.285(d)(2);

rr.    Physically restrained J.P. without adequately considering his safety during the same, in contravention of 23 Ill. Adm. Code § 1.285(d)(5);

ss.    Failed to adequately log, or log at all, a description of each incident of physical restraint, the behavior that precipitated each use of restraint, or notify J.P.'s parents of the same, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(G)-(K); and

tt.    Failed to log each incident of physical restraint used on J.P. in an adequately timely fashion, in contravention of 23 Ill. Adm. Code § 1.285(f)(2)-(3).

164.    The aforementioned acts and omissions were performed with actual or deliberate intention to harm and/or an utter indifference to or conscious disregard for J.P.'s safety.

165.    As a direct and proximate result of one or more of the aforementioned willful and wanton acts and omissions committed by Defendants, Plaintiffs were caused harm.

166.    As a further direct and proximate result of one or more of the aforementioned willful and wanton acts and omissions committed by Defendants, Plaintiffs have sustained serious, painful and permanent personal injuries, incurred medical expenses in relation to the

same, sustained a loss of a normal life, will continue to suffer said injuries, incur medical

expenses, and sustain a loss of a normal life in the future.

## TWELFTH CLAIM FOR RELIEF

### (Willful and Wanton Conduct Related to Hiring, Retention, Supervision, and Training; Plaintiff J.P. vs. Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and OATES)

167.    Plaintiff J.P. incorporates and realleges by reference the foregoing paragraphs 1

through 166, inclusive as if they were fully set forth herein.

168.    At all relevant times, Defendant ROBERTS was an agent of WCES, WCSED,

MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES.

169.    At all relevant times, Defendant ALLEN was an agent of WCES, WCSED,

MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES.

170.    At all relevant times, Defendants WCES, WCSED, MCUSD, HODGE,

COCKBURN, WILLIAMSON, MOSS and/or OATES were responsible for the hiring, retention,

supervision, and/or training of ROBERTS.

171.    At all relevant times, Defendants WCES, WCSED, MCUSD, HODGE,

COCKBURN, WILLIAMSON, MOSS and/or OATES were responsible for the hiring, retention,

supervision, and/or training of ALLEN.

172.    At all times relevant to this Complaint, Defendants WCES, WCSED, MCUSD,

HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES owed Plaintiffs a duty to refrain

from willful and wanton conduct in their hiring, retention, supervision, and training of

ROBERTS and ALLEN.

173.    In violation of said duty, Defendants WCES, WCSED, MCUSD, HODGE,

COCKBURN, WILLIAMSON, MOSS and/or OATES were guilty of one or more of the

following willful and wanton acts and omissions, in that they:

  a.    Hired ROBERTS as, or assigned ROBERTS to be, lead teacher of the
        Classroom, with an utter indifference to or conscious disregard that
        ROBERTS put students such as J.P. at risk of harm;

29

b.   Hired ALLEN as, or assigned ALLEN to be, an aide in the Classroom, with an utter indifference to or conscious disregard that ALLEN put students such as J.P. at risk of harm;

c.   Retained the employment of ROBERTS in his capacity as lead teacher of the Classroom with an utter indifference to or conscious disregard that continued employment of ROBERTS in his then-current capacity put students such as J.P. at risk of harm;

d.   Retained the employment of ALLEN in her capacity as an aide in the Classroom with an utter indifference to or conscious disregard that continued employment of ALLEN in her then-current capacity put students such as J.P. at risk of harm;

e.   Failed to adequately supervise ROBERTS in his capacity as lead teacher in the Classroom, with an utter indifference to or conscious disregard that ROBERTS put students such as J.P. at risk of harm;

f.   Failed to adequately supervise ALLEN in her capacity as aide in the Classroom, with an utter indifference to or conscious disregard that ALLEN put students such as J.P. at risk of harm;

g.   Failed to train ROBERTS in the appropriate use of isolated time out rooms;

h.   Failed to train ALLEN in the appropriate use of isolated time out rooms;

i.   Failed to train ROBERTS in the appropriate use of physical contact with students;

j.   Failed to train ALLEN in the appropriate use of physical contact with students;

k.   Failed to provide adequate training in the use of isolated time outs, in contravention of 23 Ill. Adm. Code § 1.285(h)(1); and

l.   Failed to provide adequate training in the use of physical restraints, in contravention of 23 Ill. Adm. Code § 1.285(h)(2);

m.   Failed to immediately report, or cause to be reported, the physically abusive conduct of ROBERTS and ALLEN to the appropriate authorities, as school personnel, in contravention of 325 ILCS 5/1 *et seq*.

174.   As a direct and proximate result of one or more of the aforementioned willful and wanton acts and omissions acts and omissions committed by Defendants, Plaintiffs were caused harm.

175.   As a further direct and proximate result of one or more of the aforementioned willful and wanton acts and omissions acts and omissions committed by Defendants, WCES,

WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES, Plaintiffs have sustained serious, painful and permanent personal injuries, incurred medical expenses in relation to the same, sustained a loss of a normal life, will continue to suffer said injuries, incur medical expenses, and sustain a loss of a normal life in the future.

**THIRTEENTH CLAIM FOR RELIEF**

**(Willful and Wanton Infliction of Emotional Distress; Plaintiff J.P. vs. All Defendants)**

176.     Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 175, inclusive as if they were fully set forth herein.

177.     At all times relevant to this Complaint, Defendants owed Plaintiff J.P. a duty to refrain from willful and wanton conduct in their interactions with him.

178.     Defendants violated said duty in the ways previously set forth in this Complaint.

179.     As a direct and proximate result of one or more of the willful and wanton acts or omissions previously set forth in this Complaint, Plaintiff J.P. was caused harm as a direct victim of Defendants' willful and wanton behavior.

180.     As a further direct and proximate result of one or more of the aforementioned willful and wanton acts and omissions committed by Defendants, Plaintiff J.P. suffered severe and extreme emotional distress, including an immediate automatic and instinctive emotional response including but not limited to severe and extreme fear, anger, grief, and/or shock, as well as severe and extreme long-lasting neurosis, including but not limited to a severe and extreme anxiety reaction.

**FOURTEENTH CLAIM FOR RELIEF**

**(Family Expense Act;
Plaintiff MARIONNA FELTS-PING vs. All Defendants)**

181.     Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1

31

through 180, inclusive as if they were fully set forth herein.

182.    As a further direct and proximate result of Defendants' negligence, the

parent of the Plaintiff, J.P., a minor, MARIONNA FELTS-PING, incurred and became

liable under the Family Expense Act, 750 ILCS 65/15 for certain medical expenses relating to

the injuries sustained by the Plaintiff, J.P., during the time in which he was a minor.

## V.    JURY DEMAND

Plaintiffs hereby demand that this matter be tried to a jury.

## VI.    PRAYER

WHEREFORE, Plaintiffs pray for judgment as follows:

1.    Compensatory damages to Plaintiffs for injury, emotional distress and for medical

expenses, plus the costs of this action.

2.    Appropriate equitable relief

3.    Punitive damages against HODGE, COCKBURN, WILLIAMSON, MOSS,

OATES, ROBERTS and ALLEN;

4.    Attorneys' fees and costs; and

5.    Such other and further relief as the court deems just and proper.


Respectfully Submitted,


SEIDMAN MARGULIS & FAIRMAN, LLP

/s/ Daniel R. Seidman                           .
Attorney for Plaintiffs

SEIDMAN MARGULIS & FAIRMAN, LLP
110 W. Main St., Ste. 110
Belleville, IL 62220
(618) 235-7622
No. 6308142