| | |
|---|---|
| J.P., a minor, and MARIONNA FELTS-PING,<br><br>        Plaintiffs<br><br>    v.<br><br>WILLIAMSON COUNTY EDUCATION SERVICES, WILLIAMSON COUNTY SPECIAL EDUCATION DISTRICT, MARION COMMUNITY UNIT SCHOOL DISTRICT #2, CHRISTOPHER ROBERTS, CYNTHIA ALLEN, JAMI HODGE, MELISSA COCKBURN, CHUCK WILLIAMSON, BECKY MOSS, and KEITH OATES,<br><br>        Defendants. | CIVIL NO. 3:16-cv-00879-NJR-DGW<br><br><br><br>**JURY TRIAL REQUESTED** |

## FIRST AMENDED COMPLAINT

Plaintiffs J.P., a minor by and through his mother and next friend, MARIONNA FELTS-PING, and MARIONNA FELTS-PING, individually, pursuant to leave of Court, and pursuant to this Court's Expectations for Refiling (Doc. 56, p.6-7), for their First Amended Complaint allege as follows:

## I.  JURISDICTION AND VENUE

1.      Jurisdiction over Plaintiffs' federal law claims is founded upon 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (federal civil rights jurisdiction). The Defendants reside in Illinois and the incidents giving rise to this action occurred in Williamson County, Illinois.

## II.     PARTIES AND PREFATORY FACTS

2.      Plaintiff MARIONNA FELTS-PING is a resident of Marion, Williamson County, Illinois.  She brings this action on her own behalf and as guardian for her son, J.P., a minor.

3.      Plaintiff J.P., a minor, is a resident of the City of Marion, County of Williamson, Illinois.

4.      Defendant Williamson County Education Services ("WCES") is a public entity operating under Illinois law, subject to Title II of the Americans with Disabilities Act of 1990, the requirements of the Rehabilitation Act of 1973, and to all other legal requirements referred to in this Complaint.

5.      Defendant Williamson County Special Education District ("WCSED") is a public entity operating under Illinois law, subject to Title II of the Americans with Disabilities Act of 1990, the requirements of the Rehabilitation Act of 1973, and to all other legal requirements referred to in this Complaint.

6.      Defendant Marion Community Unit School District #2 ("MCUSD") is a public entity operating under Illinois law as a school district, subject to Title II of the Americans with Disabilities Act of 1990, the requirements of the Rehabilitation Act of 1973, and to all other legal requirements referred to in this Complaint.

7.      In enacting Title II of the Americans with Disabilities Act, Congress validly abrogated state sovereign immunity, and thus WCES, WCSED, and MCUSD may be sued pursuant to Title II.  By accepting Federal Rehabilitation Act funds, WCES, WCSED, and MCUSD waived its sovereign immunity under the Eleventh Amendment to claims brought pursuant to §504 of the Rehabilitation Act of 1973.

8.      Defendant Christopher Roberts ("ROBERTS") is a resident of Williamson County, Illinois.

9.      ROBERTS is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.

10.     Defendant Cynthia Allen ("ALLEN") is a resident of the Williamson County,

2

Illinois.

11.     ALLEN is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.

12.     Defendant Jami Hodge ("HODGE") is, upon information and belief, a resident of Williamson County, Illinois.

13.     HODGE is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.

14.     Defendant Melissa Cockburn ("COCKBURN") is, upon information and belief, a resident of Williamson County, Illinois.

15.     COCKBURN is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.

16.     Defendant Chuck Williamson ("WILLIAMSON") is, upon information and belief, a resident of Williamson County, Illinois.

17.     WILLIAMSON is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.

18.     Defendant Becky Moss ("MOSS") is, upon information and belief, a resident of Williamson County, Illinois.

19.     MOSS is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.

20.     Defendant Keith Oates ("OATES") is, upon information and belief, a resident of Williamson County, Illinois.

21.     OATES is and has been, at all relevant times, an agent of WCES, WCSED, and/or MCUSD.

22.     J.P. was born in 2003.

23.     J.P. has been diagnosed with Attention Deficit Hyperactivity Disorder and Oppositional Defiant Disorder as well as specific learning disabilities associated with reading, written expression, and math.

24.    MARIONNA FELTS-PING is J.P.'s mother. During all relevant times herein, J.P. lived with MARIONNA FELTS-PING.

25.    Because of his disabilities, J.P. has received special education services, coordinated through WCES, WCSED, and/or MCUSD.

26.    Prior to August 21, 2015, J.P. began as a special education student assigned to the location at Marion Junior High School, located at 1609 W Main St, Marion, Illinois.

27.    The special education services in the classroom to which J.P. was assigned for his seventh grade year (hereinafter "the Classroom") at this location were provided by, and coordinated through, WCES, WCSED, and/or MCUSD.

28.    At all times relevant to this Complaint, ROBERTS was a teacher in the Classroom.

29.    At all times relevant to this Complaint, ALLEN was a teacher's aide or assistant in the Classroom.

30.    At all times relevant to this Complaint, HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES were administrators for Defendants WCES, WCSED, and/or MCUSD.

"Closet 2"

31.    Inside the Classroom there existed a room used as an isolated time out room.

32.    This room was referred to alternatively as "Closet 2," "the cool down room," and "the Hole" (hereinafter "Closet 2").

33.    Closet 2 has a single square window on the door, and no other windows.

34.    The door to Closet 2 contains a lever-type handle with a deadbolt type locking mechanism that locks when the handle is in the downward position.  When the handle is in the downward position, a small bar extracts out of the lock and slides through a metal eyelet secured to the right door frame, preventing someone inside the room from opening the door.

35.    Closet 2 was approximately 15 feet 6 inches by 5 feet 3 inches.

36.    Between approximately August 21, 2015, and approximately September 2, 2015,

J.P. was confined in Closet 2 on one or more occasions.

Physical Restraints

37.    Between approximately August 21, 2015, and September 2, 2015, J.P. was physically restrained at school on one or more occasions.

Exhaustion of IDEA's Administrative Procedures

38.    This lawsuit does not seek relief available under the Individuals with disabilities Education Act (IDEA), 20 U.S.C. §1412(a)(1)(A), because the gravamen of no count herein is the denial of a free appropriate public education:  Plaintiffs could bring the essentially same lawsuit had Plaintiff J.P. been confined or restrained in a public library, or if the complained-of acts and omissions occurred to an adult.  Therefore, no exhaustion of IDEA's administrative procedures under §1415(l) is required.  However, *arguendo*, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded.  Therefore, all administrative procedures under IDEA have been exhausted.

**III.    CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**(Violation of § 504 of the Rehabilitation Act of 1973;
Plaintiff J.P. vs. Defendant WCES, WCSED, MCUSD)**

39.    Plaintiff J.P. repeats and re-alleges paragraphs 1 through 38 as if fully set forth herein.

40.    Upon information and belief, Defendants WCES, WCSED, and MCUSD are, and have been at all relevant times, the recipient of federal financial assistance, and that they are therefore subject to the provisions of 29 U.S.C. § 794 that prohibits recipients of federal financial assistance from denying equal access to its services to disabled persons.

41.    At all times relevant to this Complaint, Plaintiff, J.P., had a disability as defined

5

by 29 U.S.C. § 794, *et seq.*

42.     Section 504 of the Rehabilitation Act provides that no otherwise qualified individual with a disability shall be "subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

43.     Between approximately August 21, 2015, and September 2, 2015, Defendants WCES, WCSED, and MCUSD confined Plaintiff, J.P., in Closet 2 for extended periods of time, on multiple occasions.

44.     During the aforementioned period of time, Defendants WCES, WCSED, and MCUSD confined J.P. in Closet 2 when there was no therapeutic necessity to do so, and/or when J.P. posed no risk to the safety of himself or others.

45.     On one or more of the aforementioned confinements during the aforementioned period of time, Defendants WCES, WCSED, and MCUSD confined J.P. in Closet 2 for behaviors that were manifestations of his identified disabilities, disciplining J.P. for his disabilities.

46.     Defendants WCES, WCSED, and MCUSD did not, and do not, employ similar isolation techniques against students who do not have J.P.'s disabilities.

47.     On one or more of the aforementioned confinements, Defendants WCES, WCSED, and MCUSD confined J.P. when it was not the least restrictive means necessary.

48.     Defendants WCES, WCSED, and MCUSD deliberately chose for J.P. to remain in the Classroom when they had actual knowledge of the foregoing excessive and inappropriate confinements.

49.     On one or more occasion, between approximately August 21, 2015, and September 2, 2015, Defendants WCES, WCSED, and MCUSD physically restrained J.P.,

including the use of armlock, wristlock, and/or fingerlock techniques.

50.     During the aforementioned period of time, Defendants WCES, WCSED, and
MCUSD physically restrained J.P. when there was no therapeutic necessity to do so, and/or
when J.P. posed no risk to the safety of himself or others.

51.     On one or more occasion during the aforementioned period of time, Defendants
WCES, WCSED, and MCUSD physically restrained J.P. for behaviors that were manifestations
of his identified disabilities, effectively disciplining J.P. for his disabilities.

52.     On one or more occasion during the aforementioned period of time, Defendants
WCES, WCSED, and MCUSD physically restrained J.P. when it was not the least restrictive
means necessary.

53.     Defendants WCES, WCSED, and MCUSD did not, and do not, employ similar
physical restraint techniques against students who do not have J.P.'s disabilities.

54.     Defendants WCES, WCSED, and MCUSD deliberately chose for J.P. to remain
in the Classroom when they had actual knowledge of the foregoing excessive and inappropriate
physical restraints.

55.     The foregoing actions in paragraphs 43 through 54 prevented J.P. from enjoying
equal access to educational services as his peers, thereby denying J.P. nondiscriminatory access
to a public institution.

56.     Because this count does not seek relief for the denial of free appropriate public
education, but instead seeks redress for Defendants' failure to provide nondiscriminatory access
to public institutions, no administrative exhaustion under IDEA is required.  See Fry v. Napolean
Community Schools, 580 U.S. ___, 15 (2017): ("The IDEA guarantees individually tailored
educational services, while Title II and §504 promise nondiscriminatory access to public

7

institutions.") *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded. Therefore, all administrative procedures under IDEA have been exhausted.

57.     By their actions in denying nondiscriminatory access to a public institution, Defendants WCES, WCSED, and MCUSD have violated J.P.'s rights under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder.

58.     As a result of Defendants' failure to comply with their duty under §504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the regulations promulgated thereunder, Plaintiff J.P. has suffered damages including special and general damages according to proof.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against Defendants WCES, WCSED, and MCUSD, and seeks a sum in excess of $75,000.00, plus fees, costs, and such other relief that this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (Discrimination in Violation of the Americans with Disabilities Act; Plaintiff J.P. vs. WCES, WCSED, MCUSD)

59.     Plaintiff J.P. repeats and re-alleges paragraphs 1 through 38 as if fully set forth herein.

60.     At all relevant times herein, Plaintiff J.P. was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990. Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 U.S.C. § 12131, section 201 of the ADA.

61.     Pursuant to 42 U.S.C. § 12132, Section 202 of Title II, no qualified individual

with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

62.     J.P. was at all relevant times herein a qualified individual with a disability as therein defined.

63.     Between approximately August 21, 2015, and September 2, 2015, Defendants WCES, WCSED, and MCUSD confined Plaintiff, J.P., in Closet 2 for extended periods of time, on multiple occasions.

64.     During the aforementioned period of time, Defendants WCES, WCSED, and MCUSD confined J.P. in Closet 2 when there was no therapeutic necessity to do so, and/or when J.P. posed no risk to the safety of himself or others.

65.     On one or more of the aforementioned confinements during the aforementioned period of time, Defendants WCES, WCSED, and MCUSD confined J.P. in Closet 2 for behaviors that were for behaviors that were manifestations of his identified disabilities, effectively disciplining J.P. for his disabilities by confining and/or locking him in Closet 2.

66.     Defendants WCES, WCSED, and MCUSD did not, and do not, employ similar isolation techniques against students who do not have J.P.'s disabilities.

67.     On one or more of the aforementioned confinements, Defendants WCES, WCSED, and MCUSD confined J.P. when it was not the least restrictive means necessary.

68.     Defendants WCES, WCSED, and MCUSD deliberately chose for J.P. to remain in the Classroom when they had actual knowledge of the foregoing excessive and inappropriate confinements.

69.     On one or more occasion, between approximately August 21, 2015, and

September 2, 2015, Defendants WCES, WCSED, and MCUSD physically restrained J.P., including the use of armlock, wristlock, and/or fingerlock techniques.

70.     During the aforementioned period of time, Defendants WCES, WCSED, and MCUSD physically restrained J.P. when there was no therapeutic necessity to do so, and/or when J.P. posed no risk to the safety of himself or others.

71.     On one or more occasion during the aforementioned period of time, Defendants WCES, WCSED, and MCUSD physically restrained J.P. for behaviors that were manifestations of his identified disabilities, effectively disciplining J.P. for his disabilities.

72.     On one or more occasion during the aforementioned period of time, Defendants WCES, WCSED, and MCUSD physically restrained J.P. when it was not the least restrictive means necessary.

73.     Defendants WCES, WCSED, and MCUSD did not, and do not, employ similar physical restraint techniques against students who do not have J.P.'s disabilities.

74.     Defendants WCES, WCSED, and MCUSD deliberately chose for J.P. to remain in the Classroom when they had actual knowledge of the foregoing excessive and inappropriate physical restraints.

75.     Due to the aforementioned conduct in paragraphs 63 through 74, Defendants WCES, WCSED, and MCUSD have failed in their responsibilities under Title II to provide services, programs and activities in a full and equal manner to disabled persons as described hereinabove, including failing to ensure that the educational services were provided on an equal basis to J.P., a child with disabilities, and free from hostility toward him because of his disability.

76.     Due to the aforementioned conduct in paragraphs 63 through 74, Defendants WCES, WCSED, and MCUSD have further failed in their responsibilities under Title II to

provide its services, programs and activities in a full and equal manner to disabled persons.

77.     In having failed to provide its services, programs and activities in a full and equal manner to disabled persons, Defendants WCES, WCSED, and MCUSD have failed to provide Plaintiff J.P. nondiscriminatory access to a public institution.

78.     Because this count does not seek relief for the denial of free appropriate public education, but instead seeks redress for Defendants' failure to provide nondiscriminatory access to public institutions, no administrative exhaustion under IDEA is required.  See Fry v. Napolean Community Schools, 580 U.S. ___, 15 (2017): ("The IDEA guarantees individually tailored educational services, while Title II and §504 promise nondiscriminatory access to public institutions.")  *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded.  Therefore, all administrative procedures under IDEA have been exhausted.

79.     As a result of Defendants' failure to comply with their duties under the ADA, and the regulations promulgated thereunder, Plaintiff J.P. has suffered damages including special and general damages according to proof.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against Defendants WCES, WCSED, and MCUSD and seeks a sum in excess of $75,000.00, plus fees, costs, and such other relief that this Court deems just and proper.

### THIRD CLAIM FOR RELIEF

**(Unlawful Seizure - Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution;
Plaintiff J.P. vs. ROBERTS and ALLEN)**

80.     Plaintiff J.P. repeats and re-alleges paragraphs 1 through 38 as if fully set forth

herein.

81.     At all times relevant to this Complaint, Defendants ROBERTS and ALLEN were acting under the color of the law.

82.     At all times relevant to this Complaint, J.P. had a constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and to be secure in his person and to maintain bodily integrity against unreasonable assaults of his person.

83.     Between approximately August 21, 2015, and September 2, 2015, Defendants ROBERTS and ALLEN confined Plaintiff, J.P., in Closet 2 for on multiple occasions, including for extended periods of time.

84.     On one or more occasion during the aforementioned period of time, Defendants ROBERTS and ALLEN confined Plaintiff, J.P., in Closet 2 using the door handle's deadbolt locking mechanism.

85.     On one or more occasion during the aforementioned period of time, Defendants ROBERTS and ALLEN confined Plaintiff, J.P., in Closet 2 when it did not have adequate ventilation.

86.     On one or more occasion during the aforementioned period of time, Defendants ROBERTS and ALLEN confined Plaintiff, J.P., in Closet 2 while cardboard, paper, or other objects were used to block the only window.

87.     On one or more occasion during the aforementioned period of time, Defendants ROBERTS and ALLEN confined Plaintiff, J.P., in Closet 2 while the lock had been tampered with so as to prevent J.P. from opening the door.

88.     On one or more occasion during the aforementioned period of time, Defendants

ROBERTS and ALLEN confined Plaintiff, J.P., in Closet 2 when he posed no risk of harm to himself or others.

89.     On one or more occasion during the aforementioned period of time, Defendants ROBERTS and ALLEN confined Plaintiff, J.P., in Closet 2 when it was not reasonable under the circumstances.

90.     On one or more occasion during the aforementioned period of time, Defendants ROBERTS and ALLEN, physically restrained Plaintiff, J.P.

91.     On one or more occasion during the aforementioned period of time, Defendants ROBERTS and ALLEN, physically restrained Plaintiff, J.P. using excessively, and unreasonably, painful techniques, including arm, wrist, and/or fingerlock techniques.

92.     The aforementioned techniques posed an excessive, and unreasonable, risk of harm to J.P., including to J.P.'s joints and known pressure points on the body such as the shoulder, elbow, wrist, and finger.

93.     On one or more occasion during the aforementioned period of time, Defendants ROBERTS and ALLEN, physically restrained Plaintiff, J.P. using excessively and unreasonably painful and harmful techniques when J.P. presented no risk of harm.

94.     The foregoing conduct in paragraphs 83 through 93 of Defendants ROBERTS and ALLEN restrained J.P.'s liberty to the degree that a reasonable person would not feel free to leave.

95.     The foregoing conduct in paragraphs 83 through 93 of Defendants ROBERTS and ALLEN constituted an unreasonable seizure of Plaintiff J.P., in violation of the Fourth Amendment to the United States Constitution.

96.     The foregoing conduct in paragraphs 83 through 93 of Defendants ROBERTS and

ALLEN was objectively unreasonable under the circumstances.

97.     The foregoing conduct in paragraphs 83 through 93 of Defendants ROBERTS and ALLEN in confining J.P. in an isolation room, as well as physically seizing J.P., unlawfully subjected J.P. to excessive, unreasonable, and unnecessary physical force.

98.     The foregoing conduct in paragraphs 83 through 93 of Defendants ROBERTS and ALLEN violated the clearly established rights of J.P. of which reasonable people in Defendants' position knew or should have known.

99.     The foregoing conduct in paragraphs 83 through 93 of Defendants ROBERTS and ALLEN was done in the course and scope of employment and while on duty under the color of the law.

100.    This count is being brought with regard to the individual capacity of Defendants ROBERTS and ALLEN.

101.    The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns the unreasonable seizure of Plaintiff J.P.'s person; therefore no administrative exhaustion under IDEA is required.  This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the complained-of conduct occurred to an adult.  See Fry v. Napolean Community Schools, 580 U.S. ___, 15 (2017).  *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded. Therefore, all administrative procedures under IDEA have been exhausted.

102.    The foregoing conduct in paragraphs 83 through 93 of Defendants ROBERTS and ALLEN was the direct and proximate cause of the constitutional violations stated above, and the

damages as heretofore alleged.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against Defendants ROBERTS and ALLEN, and seeks a sum in excess of $75,000.00, plus fees, costs, and such other relief that this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF

### (Unlawful Seizure - Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution; Plaintiff J.P. vs. WILLIAMSON and MOSS)

103.    Plaintiff J.P. repeat and re-alleges paragraphs 1 through 38 as if fully set forth herein.

104.    At all times relevant to this Complaint, Defendants WILLIAMSON and MOSS were acting under the color of the law.

105.    At all times relevant to this Complaint, J.P. had a constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and to be secure in his person and to maintain bodily integrity against unreasonable assaults of his person.

106.    Between approximately August 21, 2015, and September 2, 2015, Defendants WILLIAMSON and MOSS confined Plaintiff, J.P., in Closet 2 on one or more occasions, and/or for extended periods of time.

107.    On one or more occasion during the aforementioned period of time, Defendants WILLIAMSON and MOSS confined Plaintiff, J.P., in Closet 2 using the door handle's deadbolt locking mechanism.

108.    On one or more occasion during the aforementioned period of time, Defendants

WILLIAMSON and MOSS confined Plaintiff, J.P., in Closet 2 when it did not have adequate ventilation.

109.    On one or more occasion during the aforementioned period of time, Defendants WILLIAMSON and MOSS confined Plaintiff, J.P., in Closet 2 while the lock had been tampered with so as to prevent J.P. from opening the door.

110.    On one or more occasion during the aforementioned period of time, Defendants WILLIAMSON and MOSS confined Plaintiff, J.P., in Closet 2 when he posed no risk of harm to himself or others.

111.    On one or more occasion during the aforementioned period of time, Defendants WILLIAMSON and MOSS confined Plaintiff, J.P., in Closet 2 when it was not reasonable under the circumstances.

112.    The foregoing conduct in paragraphs 106 through 111 of Defendants WILLIAMSON and MOSS restrained J.P.'s liberty to the degree that a reasonable person would not feel free to leave.

113.    The foregoing conduct in paragraphs 106 through 111 of Defendants WILLIAMSON and MOSS constituted an unreasonable seizure of Plaintiff J.P., in violation of the Fourth Amendment to the United States Constitution.

114.    The foregoing conduct in paragraphs 106 through 111 of Defendants WILLIAMSON and MOSS was objectively unreasonable under the circumstances.

115.    The foregoing conduct in paragraphs106 through 111 of Defendants WILLIAMSON and MOSS in confining J.P. in an isolation room, as well as physically seizing J.P., unlawfully subjected J.P. to excessive, unreasonable, and unnecessary physical force.

116.    The foregoing conduct in paragraphs 106 through 111 of Defendants

WILLIAMSON and MOSS violated the clearly established rights of J.P. of which reasonable people in Defendants' position knew or should have known.

117.    The foregoing conduct in paragraphs 106 through 111 of Defendants WILLIAMSON and MOSS was done in the course and scope of employment and while on duty under the color of the law.

118.    This count is being brought with regard to the individual capacity of Defendants WILLIAMSON and MOSS.

119.    The foregoing conduct in paragraphs 106 through 111 of Defendants WILLIAMSON and MOSS was the direct and proximate cause of the constitutional violations stated above, and the damages as heretofore alleged.

120.    The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns the unreasonable seizure of Plaintiff J.P.'s person; therefore no administrative exhaustion under IDEA is required.  This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the complained-of conduct occurred to an adult.  See Fry v. Napolean Community Schools, 580 U.S. ___, 15 (2017).  *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded. Therefore, all administrative procedures under IDEA have been exhausted.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against Defendants WILLIAMSON and MOSS and seeks a sum in excess of $75,000.00 thousand dollars, plus fees, costs, and such other relief that this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

### (Unlawful Seizure - Pursuant to 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution; Plaintiff J.P. vs. HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES)

121.    Plaintiff J.P. repeats and re-alleges paragraphs 1 through 38 as if fully set forth herein.

122.    At all times relevant to this Complaint, Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES were responsible for training and supervising Roberts and Allen.

123.    At all times relevant to this Complaint, Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES were acting under the color of the law.

124.    At all times relevant to this Complaint, J.P. had a constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and to be secure in his person and to maintain bodily integrity against unreasonable assaults of his person.

125.    Between approximately August 21, 2015, and September 2, 2015, Roberts and Allen confined Plaintiff, J.P., in Closet 2 for on multiple occasions, including for extended periods of time.

126.    On one or more occasion during the aforementioned period of time, Roberts and Allen confined Plaintiff, J.P., in Closet 2 using the door handle's deadbolt locking mechanism.

127.    On one or more occasion during the aforementioned period of time, Roberts and Allen confined Plaintiff, J.P., in Closet 2 when it did not have adequate ventilation.

128.    On one or more occasion during the aforementioned period of time, Roberts and

Allen confined Plaintiff, J.P., in Closet 2 while cardboard, paper, or other objects were used to block the only window.

129.     On one or more occasion during the aforementioned period of time, Roberts and Allen confined Plaintiff, J.P., in Closet 2 while the lock had been tampered with so as to prevent J.P. from opening the door.

130.     On one or more occasion during the aforementioned period of time, Roberts and Allen confined Plaintiff, J.P., in Closet 2 when he posed no risk of harm to himself or others.

131.     On one or more occasion during the aforementioned period of time, Roberts and Allen confined Plaintiff, J.P., in Closet 2 when it was not reasonable under the circumstances.

132.     On one or more occasion during the aforementioned period of time, Roberts and Allen physically restrained Plaintiff, J.P.

133.     On one or more occasion during the aforementioned period of time, Roberts and Allen physically restrained Plaintiff, J.P. using excessively, and unreasonably, painful techniques, including arm, wrist, and/or fingerlock techniques.

134.     The aforementioned techniques posed an excessive, and unreasonable, risk of harm to J.P., including to J.P.'s joints and known pressure points on the body such as the shoulder, elbow, wrist, and finger.

135.     On one or more occasion during the aforementioned period of time, Roberts and Allen physically restrained Plaintiff, J.P. using excessively and unreasonably painful and harmful techniques when J.P. presented no risk of harm.

136.     Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES had actual knowledge of the forgoing conduct in paragraphs 125 through 135, and failed to take any appropriate action to either prevent this conduct.  In doing so, Defendants HODGE,

COCKBURN, WILLIAMSON, MOSS, and OATES acted with deliberate indifference to the risk of harm to J.P.

137.     Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES had actual knowledge of the forgoing conduct in paragraphs 125 through 135, and failed to train faculty and staff in the use of force and restraint when seizing special education students with disabilities. In doing so, Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES acted with deliberate indifference to the risk of harm to J.P.

138.     Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES had actual knowledge of the forgoing conduct in paragraphs 125 through 135, and failed to supervise faculty and staff in the use of force and restraint when seizing special education students with disabilities. In doing so, Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES acted with deliberate indifference to the risk of harm to J.P.

139.     The foregoing acts and omissions of Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES violated the clearly established rights of J.P. of which reasonable people in Defendants' position knew or should have known.

140.     The acts and omissions of Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES, as described in paragraphs 125 through 135, were objectively unreasonable, willful and wanton, in light of the facts and circumstances.

141.     The acts and omissions of Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES, as described in paragraphs 125 through 135, were done in the course and scope of employment and while on duty under the color of the law.

142.     This count is being brought with regard to the individual capacity of Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES.

143.     The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns the unreasonable seizure of Plaintiff J.P.'s person; therefore no administrative exhaustion under IDEA is required.  This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the complained-of conduct occurred to an adult.  See Fry v. Napolean Community Schools, 580 U.S. ___, 15 (2017).  *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded. Therefore, all administrative procedures under IDEA have been exhausted.

144.     The aforementioned actions of Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES were the direct and proximate cause of the constitutional violations stated above, and the damages as heretofore alleged.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against Defendants HODGE, COCKBURN, WILLIAMSON, MOSS, and OATES and seeks a sum in excess of $75,000.00, plus fees, costs, and such other relief that this Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### (Battery; Plaintiff J.P. vs.  Defendants ROBERTS and ALLEN)

145.     Plaintiff repeats and re-alleges paragraphs 1 through 38 as if fully set forth herein.

146.     Illinois common law defines civil battery as the willful touching of another person, without that person's consent.  Pechan v. Dynapro, Inc., 251 Ill. App. 3d 1072, 1084 (Ill. App. Ct. 1993).

147.     Between approximately August 21, 2015, and September 2, 2015, Defendants

ROBERTS and ALLEN painfully twisted J.P.'s arm behind his back.

148. During the aforementioned period of time, Defendants ROBERTS and ALLEN painfully bent J.P.'s wrist in a wristlock-type maneuver, using this painful position to forcefully push J.P. into a chair.

149. During the aforementioned period of time, Defendants ROBERTS and ALLEN painfully dragged J.P. by the arm into Closet 2.

150. During the aforementioned period of time, Defendants ROBERTS and ALLEN painfully squeezed and/or bent J.P.'s pinky finger.

151. During the aforementioned period of time, Defendants ROBERTS and ALLEN otherwise painfully and harmfully restrained J.P. on one or more occasion.

152. The foregoing conduct described in paragraphs 147 through 151 was done when J.P. did not present a risk of harm.

153. The foregoing harmful physical conduct described in paragraphs 147 through 151 was initiated each time by ROBERTS and ALLEN, not by J.P.

154. The foregoing harmful physical conduct described in paragraphs 147 through 151 were performed when J.P. did not present a risk of harm, and/or were in response to mere oral statements.

155. The foregoing harmful physical conduct described in paragraphs 147 through 151, by Defendants ROBERTS and ALLEN against Plaintiff J.P. constituted battery.

156. At no time did J.P. consent to the touching and force described in paragraphs 147 through 151.

157. The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns a common-law tort; therefore no administrative exhaustion under

IDEA is required. This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the complained-of conduct occurred to an adult. See <u>Fry v. Napolean Community Schools</u>, 580 U.S. ___, 15 (2017). *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded. Therefore, all administrative procedures under IDEA have been exhausted.

158.    As a proximate result of Defendants' illegal battery, the minor J.P. has suffered damages, including special and general damages according to proof.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against Defendants, ROBERTS and ALLEN, and seeks a sum in excess of $75,000.00, plus fees, costs, and such other relief that this Court deems just and proper.

## SEVENTH CLAIM FOR RELIEF

### (False Imprisonment;
### Plaintiff J.P. vs. All Defendants)

159.    Plaintiff J.P. repeats and re-alleges paragraphs 1 through 38 as if fully set forth herein.

160.    Illinois law defines the "common-law tort of false imprisonment [. . .] as an unlawful restraint of an individual's personal liberty or freedom of locomotion[.]" <u>Baltz v. Shelley</u>, 661 F.Supp. 169, 181, (N. D. Ill. 1987), <u>Marcus v. Liebman</u>, 59 Ill.App.3d 337, 339 (Ill. App. Ct. 1978).

161.    Illinois' false imprisonment elements include 1.) that a defendant restrained the plaintiff's personal liberty or freedom of locomotion, and 2.) that the defendant acted without reasonable grounds to believe that the plaintiff committed a criminal offense. <u>Id.</u>, <u>Reynolds v.</u>

Menard, Inc., 365 Ill.App.3d 812, 819 (Ill. App. Ct. 2006).

162.    Between approximately August 21, 2015, and September 2, 2015, Defendants confined Plaintiff, J.P., in Closet 2 for on multiple occasions.

163.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff J.P. for extended periods of time.

164.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 using the door handle's deadbolt locking mechanism.

165.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 while the lock had been tampered with so as to prevent J.P. from opening the door.

166.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 when he posed no risk of harm to himself or others.

167.    During the confinements during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 without reasonable grounds to believe that Plaintiff J.P. committed an offense for which restraint was justified.

168.    The aforementioned confinements during the aforementioned period of time were performed intentionally.

169.    The aforementioned confinements during the aforementioned period of time constituted a complete confinement and/or restriction of freedom of movement.

170.    On one or more occasions during the aforementioned period of time, Defendants intentionally physically restrained Plaintiff's person using arm, wrist, and/or fingerlock techniques.

171.    During the aforementioned physical restraints, Defendants did not have

reasonable grounds to believe that Plaintiff J.P. committed an offense for which restraint was justified.

172.    The aforementioned physical restraints during the aforementioned period of time constituted a complete restriction of freedom of movement.

173.    At no time did J.P. consent to the restraint and restriction on his freedom of movement alleged herein.

174.    At all times relevant, J.P. was aware of his confinement.

175.    Defendants' restraint of J.P. constituted false imprisonment.

176.    The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns a common-law tort; therefore no administrative exhaustion under IDEA is required.  This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the complained-of conduct occurred to an adult.  See <u>Fry v. Napolean Community Schools</u>, 580 U.S. ___, 15 (2017).  *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded.  Therefore, all administrative procedures under IDEA have been exhausted.

177.    As a direct and proximate result of one or more of the aforementioned instances of false imprisonment committed by Defendants, Plaintiff was caused harm.

178.    As a further direct and proximate result of one or more of the aforementioned instances of false imprisonment committed by Defendants, Plaintiff J.P. has sustained serious, painful and permanent personal injuries, emotional distress, sustained a loss of a normal life, will

continue to suffer said injuries, emotional distress, and sustain a loss of a normal life in the future.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against all Defendants and seeks a sum in excess of $75,000.00, plus fees, costs, and such other relief that this Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress; Plaintiff J.P. vs. All Defendants)

179.    Plaintiff J.P. repeats and re-alleges paragraphs 1 through 38 as if fully set forth herein.

180.    Illinois common law defines intentional infliction of emotional distress as extreme and outrageous conduct, intended to cause severe emotional distress, or with knowledge of a high probability that the conduct would cause such distress, and that does in fact cause severe emotional distress.  Public Finance Corp. v. Davis, 66 Ill. 2d 85, 89-90 (Ill. 1976).

181.    Between approximately August 21, 2015, and September 2, 2015, Defendants WCES, WCSED, and MCUSD confined Plaintiff, J.P., in Closet 2 for extended periods of time, and on multiple occasions.

182.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 using the door handle's deadbolt locking mechanism.

183.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 when it did not have adequate ventilation.

184.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 while cardboard, paper, or other objects were used to block the only window.

185.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 while the lock had been tampered with so as to prevent J.P. from opening the door.

186.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 while no supervising adult remained within two feet of the door to Closet 2.

187.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 when no supervising adult maintained sight of J.P.

188.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 during his lunch period.

189.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 so that J.P. was required to eat lunch in Closet 2 on the floor.

190.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 for longer than thirty minutes.

191.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 for multiple times in a three-hour period.

192.    On one or more occasions, during the aforementioned period of time, Defendants concealed their use of confinement from J.P.'s parents.

193.    During the aforementioned period of time, Defendants restrained J.P. on multiple occasions, including the use of arm, wrist, and fingerlock techniques.

194.    During the aforementioned period of time, Defendants painfully bent J.P.'s wrist in a wristlock-type maneuver, using this painful position to forcefully push J.P. into a chair.

195.    During the aforementioned period of time, Defendants painfully dragged J.P. by

the arm into Closet 2.

196.    During the aforementioned period of time, Defendants painfully squeezed and/or bent J.P.'s pinky finger.

197.    The aforementioned techniques posed an excessive, and unreasonable, risk of harm to J.P., including to J.P.'s joints and known pressure points on the body such as the shoulder, elbow, wrist, and finger.

198.    During the aforementioned period of time, Defendants made painful and harmful physical contact with J.P. for behaviors that were manifestations of his identified disabilities, effectively disciplining J.P. for his disabilities.

199.    On one or more occasion during the aforementioned period of time, Defendants physically restrained Plaintiff, J.P. using excessively and unreasonably painful and harmful techniques when J.P. presented no risk of harm.

200.    On one or more occasions, during the aforementioned period of time, Defendants concealed their use of physical contact from J.P.'s parents.

201.    The foregoing conduct by Defendants in paragraphs 181 through 200 was outrageous, extreme, and malicious.

202.    In performing the actions listed in paragraphs 181 through 200, Defendants intended to inflict, were reckless as to the infliction, and/or consciously disregarded the probability of inflicting emotional distress and humiliation upon Plaintiff.

203.    The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns a common-law tort; therefore no administrative exhaustion under IDEA is required.  This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the

complained-of conduct occurred to an adult. See <u>Fry v. Napolean Community Schools</u>, 580 U.S. ___, 15 (2017). *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded. Therefore, all administrative procedures under IDEA have been exhausted.

204.    The actions of Defendants, as alleged herein, actually and proximately caused Plaintiff J.P. to suffer severe and extreme emotional distress, and Plaintiff will continue to suffer sever and extreme emotional distress in the future.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against all Defendants and seeks a sum in excess of $75,000.00, plus fees, costs, and such other relief that this Court deems just and proper.

## NINTH CLAIM FOR RELIEF

### (Negligent Infliction of Emotional Distress; Plaintiff J.P. vs. All Defendants)

205.    Plaintiff J.P. repeats and re-alleges paragraphs 1 through 38 as if fully set forth herein.

206.    Under Illinois common law, negligent infliction of emotional distress for a direct victim requires that a defendant was negligent, and that the negligence caused an immediate or instinctive emotional response which was severe or extreme, a long lasting traumatic neurosis which was severe and extreme, or both. <u>Corgan v. Muehling</u>, 143 Ill.2d 296, 306, 311 (Ill. 1991).

207.    At all times relevant to this Complaint, Defendants owed Plaintiff J.P. a duty to exercise reasonable care in their interactions with him.

208.    In violation of the aforesaid duty, Defendants committed one or more of the

following negligent acts and/or omissions in that they:

      a.      Unnecessarily confined J.P. in a small area;

      b.      Unnecessarily confined J.P. in Closet 2 on multiple occasions;

      c.      Unnecessarily locked Closet 2 while J.P. was confined inside, on or more occasions;

      d.      Confined J.P. in a small area on one or more occasions for a period of time longer than was strictly necessary;

      e.      Confined J.P. in Closet 2 without adequate, or any, ventilation;

      f.      Confined J.P. in Closet 2 with objects that Defendants knew, or in the exercise of ordinary care should have known, could cause him harm;

      g.      Confined J.P. in Closet 2 while not at all times maintaining visual sight of J.P., when Defendants knew, or in the exercise of ordinary care should have known, that this could cause J.P. harm;

      h.      Confined J.P. in Closet 2 while covering the only window to the room, when Defendants knew, or in the exercise of ordinary care should have known, that this could cause J.P. harm;

      i.      Confined J.P. in Closet 2 with a door that was not readily able to be opened by J.P.;

      j.      Confined J.P. in Closet 2 with a door with a locking mechanism that was tampered with so that it would not be readily able to be opened by J.P.;

      k.      Failed to appropriately document or notify J.P.'s parents of each episode that J.P. was confined in the isolated time out room;

      l.      Confined J.P. when it was not the least restrictive means necessary;

      m.      Confined J.P. in an isolated time out room that was not in compliance with the requirements of 23 Ill. Adm. Code § 1.285 *et seq.*;

      n.      Confined J.P. in an isolated time out room in a manner that was not in compliance with the requirements of 23 Ill. Adm. Code § 1.285 *et seq.*;

      o.      Confined J.P. in an isolated time out room not sufficiently large, in contravention of 23 Ill. Adm. Code § 1.285(a)(1)(B);

      p.      Confined J.P. in an isolated time out room that was not free of objects

that could cause him harm, in contravention of 23 Ill. Adm. Code § 1.285(a)(1)(B);

q.    Confined J.P. in an isolated time out room while an adult responsible for supervising J.P. did not at all times remain within two feet of the door of the isolated time out room while J.P. was enclosed, shut, and/or locked in the isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(a)(3);

r.    Confined J.P. in an isolated time out room while an adult responsible for supervising J.P. was not at all times able to see J.P., in contravention of 23 Ill. Adm. Code § 1.285(a)(4);

s.    Confined J.P. in an isolated time out room while the door was locked with a mechanism that did not comport with the requirements of 23 Ill. Adm. Code § 1.285(a)(4);

t.    Kept J.P. confined in an isolated time out room longer than was strictly therapeutically necessary, in contravention of 23 Ill. Adm. Code § 1.285(e)(1);

u.    Kept J.P. confined in an isolated time out room longer than the time limits imposed by 23 Ill. Adm. Code § 1.285(e)(1);

v.    Failed to document each episode of isolated time out, in contravention of 23 Ill. Adm. Code § 1.285(f)(1);

w.    Failed to adequately document the incident or behavior that resulted in isolated time out, for each episode of isolated time out, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(F);

x.    Failed to log J.P.'s behavior while he was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(G);

y.    Failed to notify J.P.'s parents of each time J.P. was confined in an isolated time out, or keep a log of the same, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(K);

z.    Failed to log each use of the isolation room in a timely fashion, in contravention of 23 Ill. Adm. Code § 1.285(f)(2)-(3);

aa.   Failed to properly notify a qualified educator in order to evaluate Defendants' use of an isolated time out room after each use that exceeded thirty minutes, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

bb.   Failed to properly notify a qualified educator in order to evaluate the use of an isolated time out room after J.P. was confined in the same

multiple times in a three hour period, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

cc.     Failed to have a qualified educator evaluate the appropriateness of continuing to confine J.P. in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A)

dd.     Failed to have a qualified educator create a written evaluation, and place the same in J.P.'s record, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

ee.     Failed to initiate a review of the effectiveness of J.P.'s confinement in isolated time out after the first three instances that J.P. was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(5);

ff.     Failed to involve J.P.'s parents in any review of the effectiveness of J.P.'s confinement in an isolated time out room, after the first three instances that J.P. was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(5).

gg.     Failed to create or disseminate a plan for the use of isolated time outs and/or physical restraints that conformed with the requirements of 23 Ill. Adm. Code § 1.280, or otherwise conform with the requirements of this section.

hh.     Failed to provide adequate advance notification to J.P.'s parents that the use of an isolated time out room would be used, in contravention of 23 Ill. Adm. Code § 1.285(g)(1) and 105 ILCS 5/10-20.14 (a)-(d);

ii.     Failed to send written notice to J.P.'s parents regarding the confinement of J.P. in an isolated time out room in contravention of 23 Ill. Adm. Code § 1.285(g)(2);

jj.     Physically contacted J.P.'s body in a way that Defendants knew, or in the exercise of ordinary care should have known, would cause him harm;

kk.     Physically contacted J.P.'s body in a manner other than an appropriate physical restraint;

ll.     Physically restrained J.P. without the necessity to do the same;

mm.     Physically restrained J.P. when it was not the least restrictive means necessary.

nn.     Failed to adequately document or notify J.P.'s parents of incidents when J.P. was restrained or physically contacted by Defendants;

oo.    Physically restrained J.P. using techniques other than those that were specifically planned, in contravention of 23 Ill. Adm. Code § 1.285(b);

pp.    Physically restrained J.P. when there was no physical risk of harm, in contravention of 23 Ill. Adm. Code § 1.285(d)(1)(A), and 105 ILCS 5/10-20.33;

qq.    Physically restrained J.P. for verbal threats alone and/or reasons other than physical danger, in contravention of 23 Ill. Adm. Code § 1.285(d)(2);

rr.    Physically restrained J.P. without adequately considering his safety during the same, in contravention of 23 Ill. Adm. Code § 1.285(d)(5);

ss.    Failed to adequately log, or log at all, a description of each incident of physical restraint, the behavior that precipitated each use of restraint, or notify J.P.'s parents of the same, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(G)-(K); and

tt.    Failed to log each incident of physical restraint used on J.P. in an adequately timely fashion, in contravention of 23 Ill. Adm. Code § 1.285(f)(2)-(3).

209.    As a direct and proximate result of one or more of these negligent acts or omissions, Plaintiff J.P. was caused harm as a direct victim of Defendants' negligence.

210.    As a further direct and proximate result of one or more of the aforementioned negligent acts and omissions committed by Defendants, Plaintiff J.P. suffered severe and extreme emotional distress, including an immediate automatic and instinctive emotional response including but not limited to severe and extreme fear, anger, grief, and/or shock, as well as severe and extreme long-lasting neurosis, including but not limited to a severe and extreme anxiety reaction.

211.    The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns a common-law tort; therefore no administrative exhaustion under IDEA is required. This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the

complained-of conduct occurred to an adult.  See <u>Fry v. Napolean Community Schools</u>, 580 U.S. ___, 15 (2017).  *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded.  Therefore, all administrative procedures under IDEA have been exhausted.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against all Defendants and seeks a sum in excess of $75,000.00, plus fees and costs.

### TENTH CLAIM FOR RELIEF

**(Negligence;**
**Plaintiff J.P. vs. All Defendants)**

212.    Plaintiff J.P. repeats and re-alleges paragraphs 1 through 38 as if fully set forth herein.

213.    Illinois common law defines negligence as the failure to do something that a reasonable person would do, or an action which a reasonably careful person would not do. <u>Pierson v. Lyon & Healy</u>, 243 Ill.370, 377 (Ill. 1909).  The elements of negligence include a showing that a defendant owes a duty to the plaintiff, that the duty was breached, and that the breach proximately caused injuries to the plaintiff.  <u>Marshall v. Burger King Corp.</u>, 222 Ill.2d 422, 430 (Ill. 2006). Each person has the duty to use ordinary care so as to not cause others injury.  <u>Karas v. Strevell</u>, 227 Ill.2d 440, 451 (Ill. 2008).

214.    At all times relevant to this Complaint, Defendants owed Plaintiff J.P. a duty to exercise ordinary care in their interactions with him.

215.    In violation of said duty, Defendants were guilty of one or more of the following negligent acts and omissions, in that they:

a.    Unnecessarily confined J.P. in a small area;

b.    Unnecessarily confined J.P. in Closet 2 on multiple occasions;

c.    Unnecessarily locked Closet 2 while J.P. was confined inside, on or more occasions;

d.    Confined J.P. in a small area on one or more occasions for a period of time longer than was strictly necessary;

e.    Confined J.P. in Closet 2 without adequate, or any, ventilation;

f.    Confined J.P. in Closet 2 with objects that Defendants knew, or in the exercise of ordinary care should have known, could cause him harm;

g.    Confined J.P. in Closet 2 while not at all times maintaining visual sight of J.P., when Defendants knew, or in the exercise of ordinary care should have known, that this could cause J.P. harm;

h.    Confined J.P. in Closet 2 while covering the only window to the room, when Defendants knew, or in the exercise of ordinary care should have known, that this could cause J.P. harm;

i.    Confined J.P. in Closet 2 with a door that was not readily able to be opened by J.P.;

j.    Confined J.P. in Closet 2 with a door with a locking mechanism that was tampered with so that it would not be readily able to be opened by J.P.;

k.    Failed to appropriately document or notify J.P.'s parents of each episode that J.P. was confined in the isolated time out room;

l.    Confined J.P. when it was not the least restrictive means necessary;

m.    Confined J.P. in an isolated time out room that was not in compliance with the requirements of 23 Ill. Adm. Code § 1.285 *et seq.*;

n.    Confined J.P. in an isolated time out room in a manner that was not in compliance with the requirements of 23 Ill. Adm. Code § 1.285 *et seq.*;

o.    Confined J.P. in an isolated time out room not sufficiently large, in contravention of 23 Ill. Adm. Code § 1.285(a)(1)(B);

p.    Confined J.P. in an isolated time out room that was not free of objects that could cause him harm, in contravention of 23 Ill. Adm. Code § 1.285(a)(1)(B);

q.    Confined J.P. in an isolated time out room while an adult responsible for supervising J.P. did not at all times remain within two feet of the door of

the isolated time out room while J.P. was enclosed, shut, and/or locked in the isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(a)(3);

r.    Confined J.P. in an isolated time out room while an adult responsible for supervising J.P. was not at all times able to see J.P., in contravention of 23 Ill. Adm. Code § 1.285(a)(4);

s.    Confined J.P. in an isolated time out room while the door was locked with a mechanism that did not comport with the requirements of 23 Ill. Adm. Code § 1.285(a)(4);

t.    Kept J.P. confined in an isolated time out room longer than was strictly therapeutically necessary, in contravention of 23 Ill. Adm. Code § 1.285(e)(1);

u.    Kept J.P. confined in an isolated time out room longer than the time limits imposed by 23 Ill. Adm. Code § 1.285(e)(1);

v.    Failed to document each episode of isolated time out, in contravention of 23 Ill. Adm. Code § 1.285(f)(1);

w.    Failed to adequately document the incident or behavior that resulted in isolated time out, for each episode of isolated time out, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(F);

x.    Failed to log J.P.'s behavior while he was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(G);

y.    Failed to notify J.P.'s parents of each time J.P. was confined in an isolated time out, or keep a log of the same, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(K);

z.    Failed to log each use of the isolation room in a timely fashion, in contravention of 23 Ill. Adm. Code § 1.285(f)(2)-(3);

aa.    Failed to properly notify a qualified educator in order to evaluate Defendants' use of an isolated time out room after each use that exceeded thirty minutes, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

bb.    Failed to properly notify a qualified educator in order to evaluate the use of an isolated time out room after J.P. was confined in the same multiple times in a three hour period, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

cc.    Failed to have a qualified educator evaluate the appropriateness of continuing to confine J.P. in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A)

dd.     Failed to have a qualified educator create a written evaluation, and place the same in J.P.'s record, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

ee.     Failed to initiate a review of the effectiveness of J.P.'s confinement in isolated time out after the first three instances that J.P. was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(5);

ff.     Failed to involve J.P.'s parents in any review of the effectiveness of J.P.'s confinement in an isolated time out room, after the first three instances that J.P. was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(5).

gg.     Failed to create or disseminate a plan for the use of isolated time outs and/or physical restraints that conformed with the requirements of 23 Ill. Adm. Code § 1.280, or otherwise conform with the requirements of this section.

hh.     Failed to provide adequate advance notification to J.P.'s parents that the use of an isolated time out room would be used, in contravention of 23 Ill. Adm. Code § 1.285(g)(1) and 105 ILCS 5/10-20.14 (a)-(d);

ii.     Failed to send written notice to J.P.'s parents regarding the confinement of J.P. in an isolated time out room in contravention of 23 Ill. Adm. Code § 1.285(g)(2);

jj.     Physically contacted J.P.'s body in a way that Defendants knew, or in the exercise of ordinary care should have known, would cause him harm;

kk.     Physically contacted J.P.'s body in a manner other than an appropriate physical restraint;

ll.     Physically restrained J.P. without the necessity to do the same;

mm.     Physically restrained J.P. when it was not the least restrictive means necessary.

nn.     Failed to adequately document or notify J.P.'s parents of incidents when J.P. was restrained or physically contacted by Defendants;

oo.     Physically restrained J.P. using techniques other than those that were specifically planned, in contravention of 23 Ill. Adm. Code § 1.285(b);

pp.     Physically restrained J.P. when there was no physical risk of harm, in contravention of 23 Ill. Adm. Code § 1.285(d)(1)(A), and 105 ILCS 5/10-20.33;

qq.   Physically restrained J.P. for verbal threats alone and/or reasons other than physical danger, in contravention of 23 Ill. Adm. Code § 1.285(d)(2);

rr.   Physically restrained J.P. without adequately considering his safety during the same, in contravention of 23 Ill. Adm. Code § 1.285(d)(5);

ss.   Failed to adequately log, or log at all, a description of each incident of physical restraint, the behavior that precipitated each use of restraint, or notify J.P.'s parents of the same, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(G)-(K); and

tt.   Failed to log each incident of physical restraint used on J.P. in an adequately timely fashion, in contravention of 23 Ill. Adm. Code § 1.285(f)(2)-(3).

216.   As a direct and proximate result of one or more of the aforementioned negligent acts and omissions committed by Defendants, Plaintiff J.P. was caused harm.

217.   As a further direct and proximate result of one or more of the aforementioned instances of false imprisonment committed by Defendants, Plaintiff J.P. has sustained serious, painful and permanent personal injuries, emotional distress, sustained a loss of a normal life, will continue to suffer said injuries, emotional distress, and sustain a loss of a normal life in the future.

218.   The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns a common-law tort; therefore no administrative exhaustion under IDEA is required.  This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the complained-of conduct occurred to an adult.  See Fry v. Napolean Community Schools, 580 U.S. ___, 15 (2017).  *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded.  Therefore, all administrative procedures under IDEA have been exhausted.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against all Defendants and seeks a sum in excess of $75,000.00, plus fees, costs, and such other relief that this Court deems just and proper.

### ELEVENTH CLAIM FOR RELIEF

**(Negligent Hiring, Retention, Supervision, and Training;
Plaintiff J.P. vs. Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN,
WILLIAMSON, MOSS, and OATES)**

219. Plaintiff J.P. repeats and re-alleges paragraphs 1 through 38 as if fully set forth herein.

220. At all relevant times, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and OATES were responsible for the hiring, retention, supervision, and/or training of ROBERTS.

221. At all relevant times, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and OATES were responsible for the hiring, retention, supervision, and/or training of ALLEN.

222. At all times relevant to this Complaint, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and OATES owed Plaintiffs a duty to exercise reasonable care in their hiring, retention, supervision, and training of ROBERTS and ALLEN.

223. In violation of said duty, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and OATES were guilty of one or more of the following negligent acts and omissions, in that they:

   a. Hired ROBERTS as, or assigned ROBERTS to be, lead teacher of the Classroom, when Defendants knew, or in the exercise of ordinary care should have known, that ROBERTS put students such as J.P. at risk of harm due to the inappropriate use of isolated time outs and/or physical restraints;

b.      Hired ALLEN as, or assigned ALLEN to be, an aide in the Classroom, when Defendants knew, or in the exercise of ordinary care should have known, that ALLEN put students such as J.P. at risk of harm due to the inappropriate use of isolated time outs and/or physical restraints;

c.      Retained the employment of ROBERTS in his capacity as lead teacher of the Classroom when Defendants knew, or in the exercise of ordinary care should have known, that continued employment of ROBERTS in his then-current capacity put students such as J.P. at risk of harm due to the inappropriate use of isolated time outs and/or physical restraints;

d.      Retained the employment of ALLEN in her capacity as an aide in the Classroom when Defendants knew, or in the exercise of ordinary care should have known, that continued employment of ALLEN in her then-current capacity put students such as J.P. at risk of harm due to the inappropriate use of isolated time outs and/or physical restraints;

e.      Failed to adequately supervise ROBERTS in his capacity as lead teacher in the Classroom, when Defendants knew, or in the exercise of ordinary care should have known, that ROBERTS put students such as J.P. at risk of harm due to the inappropriate use of isolated time outs and/or physical restraints;

f.      Failed to adequately supervise ALLEN in her capacity as aide in the Classroom, when Defendants knew, or in the exercise of ordinary care should have known, that ALLEN put students such as J.P. at risk of harm due to the inappropriate use of isolated time outs and/or physical restraints;

g.      Failed to adequately train ROBERTS in the appropriate use of isolated time out rooms;

h.      Failed to adequately train ALLEN in the appropriate use of isolated time out rooms;

i.      Failed to adequately train ROBERTS in the appropriate use of physical contact with students;

j.      Failed to adequately train ALLEN in the appropriate use of physical contact with students;

k.      Failed to provide adequate training in the use of isolated time outs, in contravention of 23 Ill. Adm. Code § 1.285(h)(1);

l.      Failed to provide adequate training in the use of physical restraints, in contravention of 23 Ill. Adm. Code § 1.285(h)(2); and

m.      Failed to immediately report, or cause to be reported, the physically abusive conduct of ROBERTS and ALLEN to the appropriate authorities, as school personnel, in contravention of 325 ILCS 5/1 *et seq.*

224.     As a direct and proximate result of one or more of the aforementioned negligent acts and omissions committed by Defendants, Plaintiffs were caused harm.

225.     As a further direct and proximate result of one or more of the aforementioned instances of false imprisonment committed by Defendants, Plaintiff J.P. has sustained serious, painful and permanent personal injuries, emotional distress, sustained a loss of a normal life, will continue to suffer said injuries, emotional distress, and sustain a loss of a normal life in the future.

226.     The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns a common-law tort; therefore no administrative exhaustion under IDEA is required.  This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the complained-of conduct occurred to an adult.  See Fry v. Napolean Community Schools, 580 U.S. ___, 15 (2017).  *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded.  Therefore, all administrative procedures under IDEA have been exhausted.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and OATES and seeks a sum in excess of $75,000.00, plus fees, costs, and such other relief that this Court deems just and proper.

### TWELFTH CLAIM FOR RELIEF

**(Willful and Wanton Conduct;
Plaintiff J.P. vs. All Defendants)**

227. Plaintiffs J.P repeats and re-alleges paragraphs 1 through 38 as if fully set forth herein.

228. Illinois law defines willful and wanton conduct is "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others[.]" 735 ILCS 10/1-210.

229. At all times relevant to this Complaint, Defendants owed Plaintiffs a duty to refrain from willful and wanton conduct.

230. In violation of said duty, Defendants were guilty of one or more of the following willful and wanton conduct, in that they:

    a. Unnecessarily confined J.P. in a small area;

    b. Unnecessarily confined J.P. in Closet 2 on multiple occasions;

    c. Unnecessarily locked Closet 2 while J.P. was confined inside, on or more occasions;

    d. Confined J.P. in Closet 2 on one or more occasions for a period of time longer than was strictly necessary;

    e. Confined J.P. in Closet 2 without adequate, or any, ventilation;

    f. Confined J.P. in Closet 2with objects, with an utter indifference to or conscious disregard that the objects could cause him harm;

    g. Confined J.P. in Closet 2 while not at all times maintaining visual sight of J.P.;

    h. Confined J.P. in Closet 2 while covering the only window to the room;

    i. Confined J.P. in Closet 2 with a door that was not readily able to be opened by J.P.;

    j. Confined J.P. in Closet 2 with a door with a locking mechanism that was tampered with so that it would not be readily able to be opened by J.P.;

    k. Failed to appropriately document or notify J.P.'s parents of each episode that J.P. was confined in Closet 2;

    l. Confined J.P. when it was not the least restrictive means necessary;

    m. Confined J.P. in an isolated time out room that was not in compliance with the requirements of 23 Ill. Adm. Code § 1.285 *et seq.*;

n.    Confined J.P. in an isolated time out room in a manner that was not in compliance with the requirements of 23 Ill. Adm. Code § 1.285 *et seq.*;

o.    Confined J.P. in an isolated time out room not sufficiently large, in contravention of 23 Ill. Adm. Code § 1.285(a)(1)(B);

p.    Confined J.P. in an isolated time out room that was not free of objects that could cause him harm, in contravention of 23 Ill. Adm. Code § 1.285(a)(1)(B);

q.    Confined J.P. in an isolated time out room while an adult responsible for supervising J.P. did not at all times remain within two feet of the door of an isolated time out room while J.P. was enclosed, shut, and/or locked in the isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(a)(3);

r.    Confined J.P. in an isolated time out room while an adult responsible for supervising J.P. was not at all times able to see J.P., in contravention of 23 Ill. Adm. Code § 1.285(a)(4);

s.    Confined J.P. in an isolated time out room while the door was locked with a mechanism that did not comport with the requirements of 23 Ill. Adm. Code § 1.285(a)(4);

t.    Kept J.P. confined in an isolated time out room longer than was strictly therapeutically necessary, in contravention of 23 Ill. Adm. Code § 1.285(e)(1);

u.    Kept J.P. confined in an isolated time out room longer than the time limits imposed by 23 Ill. Adm. Code § 1.285(e)(1);

v.    Failed to document each episode of isolated time out, in contravention of 23 Ill. Adm. Code § 1.285(f)(1);

w.    Failed to adequately document the incident or behavior that resulted in isolated time out, for each episode of isolated time out, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(F);

x.    Failed to log J.P.'s behavior while he was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(G);

y.    Failed to notify J.P.'s parents of each time J.P. was confined in an isolated time out, or keep a log of the same, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(K);

z.    Failed to log each use of an isolation room in a timely fashion, in contravention of 23 Ill. Adm. Code § 1.285(f)(2)-(3);

aa.    Failed to properly notify a qualified educator in order to evaluate Defendants' use of an isolated time out room after each use that exceeded thirty minutes, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

bb. Failed to properly notify a qualified educator in order to evaluate the use of an isolated time out room after J.P. was confined in the same multiple times in a three hour period, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

cc. Failed to have a qualified educator evaluate the appropriateness of continuing to confine J.P. in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A)

dd. Failed to have a qualified educator create a written evaluation, and place the same in J.P.'s record, in contravention of 23 Ill. Adm. Code § 1.285(f)(4)(A);

ee. Failed to initiate a review of the effectiveness of J.P.'s confinement in isolated time out after the first three instances that J.P. was confined in the isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(5);

ff. Failed to involve J.P.'s parents in any review of the effectiveness of J.P.'s confinement in the isolated time out room, after the first three instances that J.P. was confined in an isolated time out room, in contravention of 23 Ill. Adm. Code § 1.285(f)(5).

gg. Failed to create or disseminate a plan for the use of isolated time outs and/or physical restraints that conformed with the requirements of 23 Ill. Adm. Code § 1.280, or otherwise conform with the requirements of this section.

hh. Failed to provide adequate advance notification to J.P.'s parents that the use of an isolated time out room would be used, in contravention of 23 Ill. Adm. Code § 1.285(g)(1) and 105 ILCS 5/10-20.14 (a)-(d);

ii. Failed to send written notice to J.P.'s parents regarding the confinement of J.P. in an isolated time out room in contravention of 23 Ill. Adm. Code § 1.285(g)(2);

jj. Physically contacted J.P.'s body with an utter indifference to or conscious disregard for causing J.P. harm;

kk. Physically contacted J.P.'s body in a manner other than an appropriate physical restraint;

ll. Physically restrained J.P. without the necessity to do the same;

mm. Physically restrained J.P. when it was not the least restrictive means necessary.

nn. Failed to adequately document or notify J.P.'s parents of incidents when J.P. was restrained or physically contacted by Defendants;

oo. Physically restrained J.P. using techniques other than those that were specifically planned, in contravention of 23 Ill. Adm. Code § 1.285(b);

pp.     Physically restrained J.P. when there was no physical risk of harm, in contravention of 23 Ill. Adm. Code § 1.285(d)(1)(A), and 105 ILCS 5/10-20.33;

qq.     Physically restrained J.P. for verbal threats alone and/or reasons other than physical danger, in contravention of 23 Ill. Adm. Code § 1.285(d)(2);

rr.     Physically restrained J.P. without adequately considering his safety during the same, in contravention of 23 Ill. Adm. Code § 1.285(d)(5);

ss.     Failed to adequately log, or log at all, a description of each incident of physical restraint, the behavior that precipitated each use of restraint, or notify J.P.'s parents of the same, in contravention of 23 Ill. Adm. Code § 1.285(f)(1)(G)-(K); and

tt.     Failed to log each incident of physical restraint used on J.P. in an adequately timely fashion, in contravention of 23 Ill. Adm. Code § 1.285(f)(2)-(3).

231.    The aforementioned acts and omissions were performed with actual or deliberate intention to harm and/or an utter indifference to or conscious disregard for J.P.'s safety.

232.    As a direct and proximate result of one or more of the aforementioned willful and wanton acts and omissions committed by Defendants, Plaintiffs were caused harm.

233.    As a further direct and proximate result of one or more of the aforementioned willful and wanton acts and omissions committed by Defendants, Plaintiffs have sustained serious, painful and permanent personal injuries, incurred medical expenses in relation to the same, sustained a loss of a normal life, will continue to suffer said injuries, incur medical expenses, and sustain a loss of a normal life in the future.

234.    The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns a common-law tort; therefore no administrative exhaustion under IDEA is required.  This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the complained-of conduct occurred to an adult.  See Fry v. Napolean Community Schools, 580 U.S. ___, 15 (2017).  *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is

required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded. Therefore, all administrative procedures under IDEA have been exhausted.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against all Defendants and seeks a sum in excess of $75,000.00, plus fees, costs, and such other relief that this Court deems just and proper

## THIRTEENTH CLAIM FOR RELIEF

### (Willful and Wanton Conduct Related to Hiring, Retention, Supervision, and Training; Plaintiff J.P. vs. Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and OATES)

235.     Plaintiff J.P. repeats and re-alleges paragraphs 1 through 38 as if fully set forth herein.

236.     Illinois law defines willful and wanton conduct is "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others[.]" 735 ILCS 10/1-210.

237.     At all relevant times, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES were responsible for the hiring, retention, supervision, and/or training of ROBERTS.

238.     At all relevant times, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES were responsible for the hiring, retention, supervision, and/or training of ALLEN.

239.     At all times relevant to this Complaint, Defendants WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES owed Plaintiffs a duty to refrain from willful and wanton conduct in their hiring, retention, supervision, and training of

ROBERTS and ALLEN.

240.    In violation of said duty, Defendants WCES, WCSED, MCUSD, HODGE,

COCKBURN, WILLIAMSON, MOSS and/or OATES were guilty of one or more of the

following willful and wanton acts and omissions, in that they:

        a.      Hired ROBERTS as, or assigned ROBERTS to be, lead teacher of the Classroom, with an utter indifference to or conscious disregard that ROBERTS put students such as J.P. at risk of harm;

        b.      Hired ALLEN as, or assigned ALLEN to be, an aide in the Classroom, with an utter indifference to or conscious disregard that ALLEN put students such as J.P. at risk of harm;

        c.      Retained the employment of ROBERTS in his capacity as lead teacher of the Classroom with an utter indifference to or conscious disregard that continued employment of ROBERTS in his then-current capacity put students such as J.P. at risk of harm;

        d.      Retained the employment of ALLEN in her capacity as an aide in the Classroom with an utter indifference to or conscious disregard that continued employment of ALLEN in her then-current capacity put students such as J.P. at risk of harm;

        e.      Failed to adequately supervise ROBERTS in his capacity as lead teacher in the Classroom, with an utter indifference to or conscious disregard that ROBERTS put students such as J.P. at risk of harm;

        f.      Failed to adequately supervise ALLEN in her capacity as aide in the Classroom, with an utter indifference to or conscious disregard that ALLEN put students such as J.P. at risk of harm;

        g.      Failed to train ROBERTS in the appropriate use of isolated time out rooms;

        h.      Failed to train ALLEN in the appropriate use of isolated time out rooms;

        i.      Failed to train ROBERTS in the appropriate use of physical contact with students;

        j.      Failed to train ALLEN in the appropriate use of physical contact with students;

        k.      Failed to provide adequate training in the use of isolated time outs, in contravention of 23 Ill. Adm. Code § 1.285(h)(1); and

        l.      Failed to provide adequate training in the use of physical restraints, in contravention of 23 Ill. Adm. Code § 1.285(h)(2);

        m.      Failed to immediately report, or cause to be reported, the physically

abusive conduct of ROBERTS and ALLEN to the appropriate authorities, as school personnel, in contravention of 325 ILCS 5/1 *et seq*.

241. As a direct and proximate result of one or more of the aforementioned willful and wanton acts and omissions acts and omissions committed by Defendants, Plaintiffs were caused harm.

242. As a further direct and proximate result of one or more of the aforementioned willful and wanton acts and omissions acts and omissions committed by Defendants, WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and/or OATES, Plaintiffs have sustained serious, painful and permanent personal injuries, incurred medical expenses in relation to the same, sustained a loss of a normal life, will continue to suffer said injuries, incur medical expenses, and sustain a loss of a normal life in the future.

243. The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns a common-law tort; therefore no administrative exhaustion under IDEA is required. This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the complained-of conduct occurred to an adult. See <u>Fry v. Napolean Community Schools</u>, 580 U.S. ___, 15 (2017). *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded. Therefore, all administrative procedures under IDEA have been exhausted.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against WCES, WCSED, MCUSD, HODGE, COCKBURN, WILLIAMSON, MOSS and OATES and seeks a sum in excess of $75,000.00, plus fees and costs.

# FOURTEENTH CLAIM FOR RELIEF

### (Willful and Wanton Infliction of Emotional Distress;
### Plaintiff J.P. vs. All Defendants)

244.     Plaintiff repeats and re-alleges paragraphs 1 through 38 as if fully set forth herein.

245.     Illinois law defines willful and wanton conduct is "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others[.]" 735 ILCS 10/1-210.

246.     Between approximately August 21, 2015, and September 2, 2015, Defendants WCES, WCSED, and MCUSD confined Plaintiff, J.P., in Closet 2 for extended periods of time, and on multiple occasions.

247.     On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 using the door handle's deadbolt locking mechanism.

248.     On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 when it did not have adequate ventilation.

249.     On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 while cardboard, paper, or other objects were used to block the only window.

250.     On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 while the lock had been tampered with so as to prevent J.P. from opening the door.

251.     On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 while no supervising adult remained within two feet of the door to Closet 2.

252.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 when no supervising adult maintained sight of J.P.

253.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 during his lunch period.

254.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 so that J.P. was required to eat lunch in Closet 2 on the floor.

255.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 for longer than thirty minutes.

256.    On one or more occasion during the aforementioned period of time, Defendants confined Plaintiff, J.P., in Closet 2 for multiple times in a three-hour period.

257.    On one or more occasions, during the aforementioned period of time Defendants concealed their use of confinement from J.P.'s parents.

258.    During the aforementioned period of time, Defendants restrained J.P. on multiple occasions, including the use of arm, wrist, and fingerlock techniques.

259.    During the aforementioned period of time, Defendants painfully bent J.P.'s wrist in a wristlock-type maneuver, using this painful position to forcefully push J.P. into a chair.

260.    During the aforementioned period of time, Defendants painfully dragged J.P. by the arm into Closet 2.

261.    During the aforementioned period of time, Defendants painfully squeezed and/or bent J.P.'s pinky finger.

262.    The aforementioned techniques posed an excessive, and unreasonable, risk of harm to J.P., including to J.P.'s joints and known pressure points on the body such as the shoulder, elbow, wrist, and finger.

263.     During the aforementioned period of time, Defendants made painful and harmful physical contact with J.P. for behaviors that were manifestations of his identified disabilities, effectively disciplining J.P. for his disabilities.

264.     On one or more occasion during the aforementioned period of time, Defendants physically restrained Plaintiff, J.P. using excessively and unreasonably painful and harmful techniques when J.P. presented no risk of harm.

265.     On one or more occasions, during the aforementioned period of time, Defendants concealed their use of physical contact from J.P.'s parents.

266.     At all times relevant to this Complaint, Defendants owed Plaintiff J.P. a duty to refrain from willful and wanton conduct in their interactions with him.

267.     Defendants breached the foregoing duty by their conduct detailed in paragraphs 246 through 265.

268.     The foregoing conduct by Defendants in paragraphs 246 through 265 was outrageous, extreme, and malicious.

269.     In performing the actions listed in paragraphs 246 through 265, Defendants intended to inflict, were reckless as to the infliction, and/or consciously disregarded the probability of inflicting emotional distress and humiliation upon Plaintiff.

270.     The actions of Defendants, as alleged herein, actually and proximately caused Plaintiff J.P. to suffer severe and extreme emotional distress, and Plaintiff will continue to suffer sever and extreme emotional distress in the future.

271.     As a direct and proximate result of one or more of the willful and wanton acts or omissions previously set forth in paragraphs 246 through 265 of this count, Plaintiff J.P. was caused harm as a direct victim of Defendants' willful and wanton behavior.

272.     As a further direct and proximate result of one or more of the aforementioned willful and wanton acts and omissions committed by Defendants, Plaintiff J.P. suffered severe and extreme emotional distress, including an immediate automatic and instinctive emotional response including but not limited to severe and extreme fear, anger, grief, and/or shock, as well as severe and extreme long-lasting neurosis, including but not limited to a severe and extreme anxiety reaction.

273.     As a further direct and proximate result of one or more of the aforementioned willful and wanton acts and omissions acts and omissions committed by Defendants, Plaintiff J.P. has sustained serious, painful and permanent personal injuries, incurred medical expenses in relation to the same, sustained a loss of a normal life, will continue to suffer said injuries, incur medical expenses, and sustain a loss of a normal life in the future.

274.     The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns a common-law tort; therefore no administrative exhaustion under IDEA is required.  This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the complained-of conduct occurred to an adult.  See Fry v. Napolean Community Schools, 580 U.S. ___, 15 (2017).  *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded.  Therefore, all administrative procedures under IDEA have been exhausted.

WHEREFORE, Plaintiff, J.P., a minor, by and through his mother, MARIONNA FELTS-PING, prays for judgment against all Defendants and seeks a sum in excess of $75,000.00, plus fees, costs, and such other relief that this Court deems just and proper.

# FIFTEENTH CLAIM FOR RELIEF

## (Family Expense Act;
### Plaintiff MARIONNA FELTS-PING vs. All Defendants)

275.     Plaintiff MARIONNA FELTS-PING repeats and realleges paragraphs 1 through 38, inclusive as if they were fully set forth herein.

276.     All Defendants are liable to Plaintiff J.P. for causing personal injuries, for which J.P. has incurred medical expenses.  This liability is based in Counts One through Fourteen of this Complaint.

277.     The Family Expense Act provides a cause of action for reimbursement for medical expenses paid by parents of a minor child for the minor's treatment where a defendant is liable to the minor.  750 ILCS 65/15.

278.     Under the Family Expense Act, Plaintiff MARIONNA FELTS-PING  has become liable for medical expenses incurred by J.P. caused by Defendants' liability relating to the injuries sustained by J.P., during a time in which he was a minor.

285.      The gravamen of this count does not concern the denial of free appropriate public education, but instead concerns a state law statutory right of action that provides for recovery of medical expenses incurred by minors and paid by the minor's parents, therefore no administrative exhaustion under IDEA is required.  This claim would be available to Plaintiff had the complained-of conduct occurred at a non-educational public facility, and the same claim would be viable had the complained-of conduct occurred to an adult.  See Fry v. Napolean Community Schools, 580 U.S. ___, 15 (2017).  *Arguendo*, to the extent that exhaustion of IDEA's administrative procedures is required, Plaintiffs have pursued IDEA administrative remedies under ISBE Case No. 2017-0002, which has been resolved, and has concluded.

Therefore, all administrative procedures under IDEA have been exhausted.

WHEREFORE, Plaintiff, MARIONNA FELTS-PING, prays for judgment against all Defendants, pursuant to the Family Expense Act, 750 ILCS 65/15, for medical expenses of the Plaintiff, RAMGIELEE RODRIGUEZ, then a minor.

## IV.    JURY DEMAND

Plaintiffs hereby demand that this matter be tried to a jury.

Respectfully Submitted,

SEIDMAN MARGULIS & FAIRMAN, LLP

/s/ Daniel R. Seidman                              .
Attorney for Plaintiffs

SEIDMAN MARGULIS & FAIRMAN, LLP
110 W. Main St., Ste. 110
Belleville, IL 62220
(618) 235-7622
f: (224) 603-8345
No. 6308142
dseidman@seidmanlaw.net

<u>**CERTIFICATE OF SERVICE**</u>

      I, Daniel R. Seidman, hereby certify that on July 20, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**Brandon K. Wright**
**MILLER, TRACY, BRAUN, FUNK & MILLER, LTD.**
**316 S. Charter, P.O. Box 80**
**Monticello, IL 61856**

**John C. Ryan**
**FEIRICH/MAGER/GREEN/RYAN**
**2001 W. Main St.**
**P.O. Box 1570**
**Carbondale, IL 62903**

By:    /s/ Daniel R. Seidman              
                          Attorney for Plaintiff

Daniel R. Seidman
SEIDMAN MARGULIS & FAIRMAN, LLP
110 W. Main St., Ste. 110
Belleville, IL 62220
(618) 235-7622
f: (224) 603-8345
No. 6308142
dseidman@seidmanlaw.net